# IN THE SUPREME COURT OF TEXAS

════════════
No. 13-0816
════════════

EL PASO MARKETING, L.P., PETITIONER,

v.

WOLF HOLLOW I, L.P., RESPONDENT

════════════════════════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE FOURTEENTH DISTRICT OF TEXAS
════════════════════════════════════════════════════════

**PER CURIAM**

In this case the court of appeals remanded a claim for trial because it thought we had compelled this result in an earlier appeal. Because we did not, we reverse this portion of the court of appeals' judgment.

Wolf Hollow I, L.P. owns a power plant. El Paso Marketing, L.P. provides gas for the plant under a Supply Agreement with Wolf Hollow. Gas is transported to the plant through a pipeline owned by Enterprise Texas Pipeline LLC. The gas is transported under terms of a Transportation Agreement between El Paso and Enterprise.

El Paso sued Wolf Hollow seeking declarations construing their contractual relationship. Wolf Hollow counterclaimed against El Paso for breach of the Supply Agreement. El Paso brought a third-party claim against Enterprise, and Wolf Hollow brought a cross-claim against Enterprise for negligence. Wolf Hollow's claims against El Paso and Enterprise concerned two factual claims. One

claim concerned four interruptions in gas delivery that required purchases of replacement power. The other claim was that Enterprise delivered gas contaminated with liquids that damaged Wolf Hollow's plant, required plant upgrades, and required purchases of replacement power.

The trial court granted summary judgment for El Paso and Enterprise. Among other holdings and declarations, it held that the four delivery interruptions were excused under the force-majeure provision of the Supply Agreement, and that all damages sought by Wolf Hollow against El Paso were consequential damages waived by the Supply Agreement.

The trial court also rendered a declaratory judgment holding that (1) the four service interruptions constituted events of force majeure excusing performance, (2) El Paso gave proper notice of force majeure, (3) under Section 14.1 of the Supply Agreement, Wolf Hollow's exclusive remedy for the gas-quality claim is the assignment to Wolf Hollow of any claim El Paso has against Enterprise, and (4) the default and remedies provision of the Supply Agreement (Article 21) does not apply to Wolf Hollow's gas-quality claim.

On appeal, the court of appeals, without reaching all of the issues presented, held that Wolf Hollow's claims against El Paso failed, agreeing with the trial court that all the alleged damages were consequential damages waived by the Supply Agreement. 329 S.W.3d 628, 636–43 (*Wolf Hollow I*). Because the court of appeals agreed with the trial court on this issue, it found the four trial court declarations described above superfluous or moot, and modified the final judgment to remove the declaratory judgment language. *Id.* at 645. The court of appeals reversed the summary judgment in favor of Enterprise. *Id.* at 643–45.

In this posture the case reached us. We held that the negligence claim against Enterprise failed as a matter of law. 383 S.W.3d 138, 142–44 (*Wolf Hollow II*). We then turned to Wolf Hollow's contract claims against El Paso. We reasoned that, questions of consequential versus direct damages aside, and questions of "cover" under the Uniform Commercial Code aside, the Supply Agreement expressly provided for a form of replacement-power damages in Article 21. *Id.* at 144–45. We briefly addressed contract provisions relating to the purchase of replacement power and concluded there was some evidence that Wolf Hollow had complied with the procedures set out in Article 21. *Id.* at 145. Finally, we briefly addressed the court of appeals' decision to vacate the trial court's declaratory judgment. We reversed this part of the court of appeals' judgment because we concluded that the court of appeals had vacated the declaratory judgment as moot; the court of appeals had concluded that there was no reason to issue the declaratory judgment in light of its holding that all of Wolf Hollow's claims were barred by the waiver of consequential damages. *Id.* Since we held that further proceedings were warranted on claims for replacement-power damages that were not barred by the contractual waiver of consequential damages, we reversed this part of the court of appeals' judgment and remanded the case to the court of appeals. *Id.* at 145–46.

On remand the court of appeals held that the service-interruption claim failed because that claim was barred by the force-majeure provision of the Supply Agreement. 409 S.W.3d 879, 885–88 (*Wolf Hollow III*). This holding marked the first time an appellate court had reached the force-majeure defense, the subject of the first two declarations of the trial court's judgment. Wolf Hollow does not challenge this ruling.

With the claims against Enterprise gone after our *Wolf Hollow II* decision and the service-interruption claim barred by force majeure, the court of appeals was left to address Wolf Hollow's gas-quality claim against El Paso. The trial court had granted summary judgment for El Paso on this claim and had issued two declarations regarding it. The third declaration held that Wolf Hollow could not recover on this claim because Wolf Hollow's exclusive remedy was an assignment of any gas-quality claim El Paso may have against Enterprise under Section 14.1 of the Supply Agreement. The court of appeals concluded that we had expressly overruled this declaration in *Wolf Hollow II*, when we stated that "nothing in Section 14.1 suggests that [Wolf Hollow] cannot sue El Paso for breach of the Supply Agreement in allowing poor quality gas to be delivered." *Wolf Hollow III*, at 889 (quoting *Wolf Hollow II*, at 144).

The trial court separately rejected Wolf Hollow's gas-quality claim in its fourth declaration, which declared that Article 21, providing for replacement-power damages, "does not apply to gas quality claims for gas delivered to Wolf Hollow on the [Enterprise] pipeline." The court of appeals in *Wolf Hollow III* concluded that we had also rejected this declaration in *Wolf Hollow II*. The court of appeals quoted our decision in *Wolf Hollow II*, including our statement that "there is evidence Wolf Hollow is entitled to recover replacement-power damages under Section 21.1(c)." *Wolf Hollow III*, at 889 (quoting *Wolf Hollow II*, at 145). Concluding that "[t]he Texas Supreme Court effectively reversed the trial court's third and fourth declarations," the court of appeals "remand[ed] the case for trial on Wolf Hollow's claims for replacement-power damages for the failure to deliver quality gas." *Wolf Hollow III*, at 892.

In *Wolf Hollow III*, Justice Busby concurred, agreeing with the majority opinion that our decision in *Wolf Hollow II* effectively reversed the trial court's declaratory judgment, including the trial court's fourth declaration that Article 21 did not apply to gas-quality claims. *Id.* at 892–93 (Busby, J., concurring). However, he opined that if he were writing on a clean slate he would affirm the trial court's fourth declaration that Article 21 does not apply to Wolf Hollow's gas-*quality* claim against El Paso. Without repeating here Justice Busby's analysis, he read Article 21 as only applying to certain gas-*quantity* claims.

Chief Justice Hedges concurred in part and dissented in part in *Wolf Hollow III*. *Id.* at 893–97 (Hedges, C. J., concurring in part and dissenting in part). She agreed that the trial court's first and second declarations should be affirmed, and thus agreed that El Paso should prevail on the delivery-interruption claim. However, she also believed that (1) the trial court's summary judgment on the gas-quality claim, as reflected in the third and fourth declarations, was correct, and (2) the Supreme Court had not precluded the court of appeals from affirming the summary judgment on both the delivery-interruption claim and the gas-quality claim. Like Justice Busby, Chief Justice Hedges focused in part on whether replacement-power damages under Article 21 could be awarded on Wolf Hollow's gas-quality claim.

In its second appeal to us, El Paso now argues that Wolf Hollow's gas-quality claim should fail because Article 21 does not apply to that claim, as the trial court held in its fourth declaration. El Paso argues that we did not decide this question in *Wolf Hollow II*. Without reaching the ultimate merits of this argument and deciding whether summary judgment was warranted on the gas-quality

5

claim, we agree with El Paso that our decision in *Wolf Hollow II* did not preclude the court of appeals from deciding this question.

We believe the court of appeals felt itself too constrained by our decision in *Wolf Hollow II*. In holding that the Supply Agreement provided for replacement-power damages that were available notwithstanding a separate waiver of consequential damages, and that "Wolf Hollow may pursue replacement-power damages under the contract," *Wolf Hollow II*, at 145, we did not hold that Wolf Hollow would necessarily prevail in obtaining replacement-power damages on its gas-quality claim. We reversed the court of appeals' judgment insofar as it deleted the trial court's "declarations as moot on the ground that all of Wolf Hollow's claims were barred by the waiver of consequential damages." *Id.* Read in context, vacating this portion of the court of appeals' judgment was warranted because we held that the Supply Agreement's waiver of consequential damages did not necessarily preclude an award of replacement-power damages. We did not hold, on the merits, that Wolf Hollow was entitled to recover on its claim for replacement-power damages resulting from poor-quality gas. While we held that replacement-power damages were available under the terms of the Supply Agreement in certain circumstances, and thus disagreed with the court of appeals' conclusion in *Wolf Hollow I* that the waiver of consequential damages entitled El Paso to summary judgment on all claims against it, we did not rule on all the issues, including those discussed in the court of appeals' concurring and dissenting opinions in *Wolf Hollow III*, regarding the availability of replacement-power damages on Wolf Hollow's gas-quality claim.[1] No appellate court has decided the merits of

---

[1] We note, however, that insofar as Chief Justice Hedges relied on Section 14.1 of the Supply Agreement, we held in *Wolf Hollow II*, and continue to hold, in response to El Paso's argument that Wolf Hollow's exclusive remedy on gas-quality claims is an assignment of El Paso's claim against Enterprise under Section 14.1, that "nothing in Section

these questions, nor has any appellate court passed on whatever error-preservation issues might accompany them. The court of appeals erred in *Wolf Hollow III* insofar as it held that our *Wolf Hollow II* decision precluded it from reviewing these questions.

Accordingly, without hearing oral argument, *see* TEX. R. APP. P. 59.1, we reverse the court of appeals' judgment relating to Wolf Hollow's gas-quality claim for replacement-power damages, and otherwise affirm the judgment.[2] We remand the case to the court of appeals for further proceedings consistent with this opinion.

**OPINION DELIVERED:** November 21, 2014

---

14.1 suggests that [Wolf Hollow] cannot sue El Paso for breach of the Supply Agreement in allowing poor quality gas to be delivered." *Wolf Hollow II*, at 144. In *Wolf Hollow II*, El Paso moved for rehearing, arguing that "[t]he Court incorrectly construes El Paso's obligation under Section 14.1 of the Supply Agreement as to gas quality," but we denied the motion.

[2] In *Wolf Hollow III*, the court of appeals separately held that Wolf Hollow's claims for breach of the Supply Agreement's Article 5 provisions survived summary judgment insofar as Wolf Hollow suffered replacement-power damages. We agree with the court of appeals that "[t]he fuel-management duties under [Article 5 of] the agreement are very broad, requiring El Paso to manage the gas transportation and to use prudent fuel-management practices to minimize costs to Wolf Hollow." *Wolf Hollow III*, at 890. The court of appeals correctly held that its earlier ruling—that any breach of Article 5 was barred by the waiver of consequential damages—could no longer stand in light of our ruling in *Wolf Hollow II* that Wolf Hollow can recover for breaches of the Supply Agreement if it can establish replacement-power damages. However, as explained above, neither this Court nor the court of appeals has ruled on whether Article 21, which provides for replacement-power damages, applies only to gas-quantity claims, as El Paso contends, or applies to Wolf Hollow's gas-quality claim as well, as Wolf Hollow contends.

7