**Affirmed as Modified and Opinion on Remand filed July 2, 2015.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-09-00118-CV

---

## WOLF HOLLOW I, L.P., Appellant

### V.

## EL PASO MARKETING, L.P. AND ENTERPRISE TEXAS PIPELINE, LLC, Appellees

---

**On Appeal from the 165th District Court
Harris County, Texas
Trial Court Cause No. 2006-70615**

---

## OPINION ON REMAND

After many years of litigation, including two trips to the Texas Supreme Court, there is still one question that remains to be decided in this complex contract dispute: Can Wolf Hollow recover replacement-power damages in its gas-quality claim against El Paso? Our answer is "no." Because the trial court reached the same conclusion but through an erroneous declaratory judgment, we vacate the judgment in part and affirm the judgment as modified.

# BACKGROUND

Wolf Hollow owns a power plant that runs on a supply of natural gas. El Paso manages that supply by purchasing gas at a market hub and then directing the gas into a pipeline connected to Wolf Hollow's plant. The pipeline is owned by Enterprise.

Wolf Hollow and El Paso operate under a Supply Agreement. El Paso and Enterprise operate, in turn, under a Transportation Agreement. The Supply Agreement requires El Paso to deliver gas that satisfies the minimum quality specifications set forth in the Transportation Agreement.

Between 2006 and 2007, Wolf Hollow experienced four interruptions in the delivery of gas to its plant. One of the interruptions was caused by an Enterprise technician whose computer error triggered safety valves to automatically halt the flow of gas to the plant. The other three interruptions were caused by equipment failures on the Enterprise pipeline.

El Paso notified Wolf Hollow of these interruptions and asserted that they were events of force majeure, which are excused under the Supply Agreement. Wolf Hollow disputed that the interruptions were excused. Wolf Hollow also complained that, on other occasions, El Paso had delivered contaminated gas with extremely variable heat content. Because of this poor quality gas, Wolf Hollow asserted that the plant had to be shut down, and that costs were incurred for purchasing replacement power and for cleaning and upgrading the plant's equipment.

*Proceedings in the Trial Court*

Many issues were litigated in the trial court, but we will limit our discussion to the only issue remaining in this appeal. The litigation began when El Paso sued

Wolf Hollow, seeking declarations construing the parties' contractual relationship. Wolf Hollow counterclaimed, asserting that El Paso had breached the Supply Agreement by delivering nonconforming gas, allowing interruptions in the delivery of conforming gas, and failing to provide fuel-management services. Wolf Hollow further alleged that El Paso breached an express warranty, an implied warranty of merchantability, an implied warranty of fitness for a particular purpose, and a warranty as to fuel-management services. Wolf Hollow sought actual damages with respect to these alleged breaches. The damages included costs for having to procure replacement power when the plant was shut down for repairs, and costs for cleaning and upgrading plant equipment damaged by the nonconforming gas.

The trial court resolved the parties' dispute by ruling on a series of summary-judgment motions filed by El Paso. The dispositive motions were all based on provisions of the Supply Agreement. The trial court ruled in pertinent part: (1) that all damages sought by Wolf Hollow were consequential damages barred by the Supply Agreement; (2) that Wolf Hollow had an exclusive remedy under the Supply Agreement for any claim concerning gas quality, and that remedy was an assignment by El Paso of any claim it might have against Enterprise; (3) that there was no evidence that El Paso had breached the fuel-management provisions of the Supply Agreement; and (4) that Wolf Hollow's gas-quality claim, as pleaded, did not fall within the scope of Article XXI of the Supply Agreement, which provided for the recovery of replacement-power costs.

After issuing its summary-judgment orders, the trial court rendered a final judgment that Wolf Hollow take nothing on its claims against El Paso. The trial court included four declarations in its judgment. Only the third and fourth declarations warrant discussion in this opinion. The third declaration provided that Wolf Hollow's exclusive remedy on its gas-quality claim for gas delivered on the

3

Enterprise pipeline is to receive an assignment of El Paso's claim against Enterprise. The fourth declaration provided that Article XXI does not apply to Wolf Hollow's gas-quality claim against El Paso.

*In the Court of Appeals*

On original submission, this court agreed with the trial court's ruling that all of the damages sought by Wolf Hollow were consequential damages, which the parties specifically waived under the Supply Agreement. *See Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 329 S.W.3d 628, 369, 642 (Tex. App.—Houston [14th Dist.] 2010) ("*Wolf Hollow I*"). Believing that this waiver defeated each of Wolf Hollow's claims against El Paso, we vacated the trial court's declaratory judgment, concluding that the declarations were moot. *Id.* at 642.

*In the Texas Supreme Court*

The parties petitioned to the Texas Supreme Court, which granted review of our judgment. The court held that our analysis was incorrect on the issue of consequential damages. *See El Paso Mktg., L.P. v. Wolf Hollow I., L.P.*, 383 S.W.3d 138, 144–45 (Tex. 2012) ("*Wolf Hollow II*"). The court explained that Wolf Hollow had sought two types of damages: "replacement-power damages" for the costs of procuring replacement power when the plant was shut down, and "plant damages" for the costs of cleaning and upgrading plant equipment. *Id.* at 142. The court agreed that both types of damages were consequential, as opposed to direct, but the court held that only the plant damages were barred by the Supply Agreement's waiver of consequential damages. *Id.* at 143–45. Because Wolf Hollow and El Paso had expressly bargained for replacement power in the Supply Agreement, the court held that a claim for replacement power would survive the waiver of consequential damages. *Id.* at 145–46. The court also held that there was

4

some evidence that Wolf Hollow had followed the necessary procedures under the Supply Agreement for recovering replacement power. *Id.* at 145.

The court then addressed our judgment regarding the trial court's declaratory judgment. Explaining that the waiver of consequential damages did not fully preclude Wolf Hollow from recovering all of its requested damages, the court held that the declarations should not have been vacated as moot, as we had previously determined. *Id.* at 145–46. The court remanded the case to us to decide whether Wolf Hollow could recover replacement-power damages on any of its claims against El Paso. *Id.*

*On Remand in the Court of Appeals*

A majority of this court concluded that Wolf Hollow could assert a gas-quality claim against El Paso, as opposed to just Enterprise, despite the assignment remedy provided under the Supply Agreement. *See Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 409 S.W.3d 879, 888–92 (Tex. App.—Houston [14th Dist.] 2013) ("*Wolf Hollow III*"). The majority explained that the assignment was not an exclusive remedy because the Supreme Court had stated in *Wolf Hollow II* that "nothing in [the Supply Agreement] suggests that [Wolf Hollow] cannot sue El Paso for breach of the Supply Agreement in allowing poor quality gas to be delivered." *Id.* Relying on this statement, the majority held that the trial court's third declaration had already been overruled. *Id.*

The majority reached a similar conclusion regarding the trial court's fourth declaration, which stated that Article XXI of the Supply Agreement did not apply to gas-quality claims. *Id.* The majority held that Article XXI did apply to gas-quality claims because Article XXI was the only section in the contract that provided for replacement power and the supreme court had stated in *Wolf Hollow II* that "there is evidence Wolf Hollow is entitled to recover replacement-power

5

damages under Section 21.1(c) of the Supply Agreement." *Id.* The majority concluded that the supreme court had rejected the declaration. *Id.*

Among other issues, the majority addressed El Paso's fuel-management duties, which had not been discussed in *Wolf Hollow I*. These duties, which are organized under Article V of the Supply Agreement, require El Paso to manage the transportation of gas and to use prudent fuel-management practices to minimize costs to Wolf Hollow. The majority held that these duties were very broad and that there was evidence showing that El Paso had breached them. *Id.* at 890. The majority accordingly held that the trial court erred by granting El Paso's no-evidence motion for summary judgment. *Id.*

Chief Justice Hedges dissented. She believed that the assignment remedy was exclusive and that Article XXI did not apply to Wolf Hollow's gas-quality claim, as the trial court had held. *Id.* at 894–95. She further contended that the supreme court's decision in *Wolf Hollow II* did not preclude the court of appeals from affirming the trial court's declaratory judgment. *Id.*

*Back Before the Texas Supreme Court*

El Paso filed a petition for review, complaining that the majority in *Wolf Hollow III* had misinterpreted the supreme court's opinion in *Wolf Hollow II*. El Paso argued that *Wolf Hollow II* did not dispose of the trial court's third and fourth declarations. El Paso accordingly requested the supreme court to reach the merits of those declarations, or remand the case for this court to reconsider them. Wolf Hollow did not file a petition for review.

The supreme court granted review once again, but it limited its opinion to addressing only the fourth declaration—i.e., whether Article XXI applied to Wolf Hollow's gas-quality claim. *See El Paso Mktg. L.P. v. Wolf Hollow I, L.P.*, 450

6

S.W.3d 121, 124 (Tex. 2014) (per curiam) ("*Wolf Hollow IV*") ("In its second appeal to us, El Paso now argues that Wolf Hollow's gas-quality claim should fail because Article 21 does not apply to that claim, as the trial court held in its fourth declaration."). The supreme court held that it had not addressed the merits of Article XXI in *Wolf Hollow II*. *Id.* The court clarified that it had merely decided that "replacement-power damages were available under the Supply Agreement *in certain circumstances*." *Id.* (emphasis added). The court indicated that Wolf Hollow could be entitled to such damages in a gas-quality claim, but the court cautioned that Wolf Hollow might not prevail on the claim presented in this case. *Id.* ("[W]e did not hold that Wolf Hollow would necessarily prevail in obtaining replacement-power damages on its gas-quality claim.").

In footnote one of *Wolf Hollow IV*, the supreme court disagreed with the dissenting opinion from Chief Justice Hedges and reiterated that "nothing in [the Supply Agreement] suggests that [Wolf Hollow] cannot sue El Paso for breach of the Supply Agreement in allowing poor quality gas to be delivered." *Id.* at 124 n.1. In footnote two, the court approved of our analysis regarding Article V, in which we said that Wolf Hollow, at best, might be able to recover replacement-power damages for El Paso's breach of its fuel-management duties. *Id.* at 125 n.2. The court remanded the case for us to determine whether Article XXI, which provides for replacement-power damages, "applies only to gas-quantity claims, as El Paso contends, or applies to Wolf Hollow's gas-quality claim as well, as Wolf Hollow contends." *Id.*

## STANDARD OF REVIEW

The supreme court has instructed this court to determine the correctness of the trial court's fourth declaration.[1] The full text of that declaration provides as follows: "Article XXI of the Agreement does not apply to gas quality claims for gas delivered to Wolf Hollow on the Enterprise Texas Pipeline (referenced as 'EPGT' or E.P.G.T. Texas Pipeline in the Agreement)."

Declaratory judgments rendered by summary judgment are reviewed under the same standards that govern summary judgments generally. *See Hourani v. Katzen*, 305 S.W.3d 239, 248 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We review de novo the trial court's grant of a summary judgment. *See Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). In a traditional motion for summary judgment, the movant is charged with carrying the burden of showing that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Tex. R. Civ. P. 166a(c); *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam). Once the movant produces sufficient evidence conclusively establishing its right to summary judgment, the burden shifts to the nonmovant to present any issues or evidence that would preclude a summary judgment. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). We consider all of the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

---

[1] Although the trial court's third and fourth declarations both address issues relating to Wolf Hollow's gas-quality claim, the Texas Supreme Court made clear in *Wolf Hollow II* and *Wolf Hollow IV* that the third declaration is erroneous, and that Wolf Hollow is not limited to an assignment remedy as provided under Article XIV of the Supply Agreement. During the most recent oral argument in this court, counsel for El Paso conceded that the assignment remedy is not exclusive, and that Wolf Hollow could have sued El Paso for direct damages.

## ANALYSIS

El Paso filed seven motions for summary judgment in this case. The trial court's fourth declaration resulted from grounds presented in the first motion, which was filed on November 12, 2007, and from Wolf Hollow's amended counterclaim.

In its motion, El Paso argued that Article XIV provided Wolf Hollow's exclusive remedy for its gas-quality claim. Article XIV is entitled "Quality," and it addresses gas-quality issues as follows:

> The quality of any Quantity of Gas that [El Paso] sells, delivers or causes to be delivered to [Wolf Hollow] . . . shall meet or exceed the minimum gas quality specifications established in the [Transportation Agreement]; provided, however, that (i) if [Enterprise] fails to deliver Gas at the [Enterprise] Point of Delivery that meets such quality specifications, then [El Paso] shall assign to [Wolf Hollow], or otherwise cause [Wolf Hollow] to be subrogated to, any claim that [El Paso] may have against [Enterprise] as a result of such delivery failure . . . .

El Paso then turned to Article XXI, a provision entitled "Default and Remedies." The word "quality" does not appear in Article XXI. On its face, the article addresses El Paso's failure to deliver a quantity of gas to Wolf Hollow.

The conditions and formula for recovering replacement power are dictated in Section 21.1 of Article XXI. That section is divided into three parts. The first part, Section 21.1(a), states as follows:

> Delivery Failure. (a) Unless excused by an Event of Force Majeure . . . , if at any time [El Paso] determines that it will not be able to sell, deliver or cause to be delivered, or actually fails to sell, deliver or cause to be delivered, to [Wolf Hollow] . . . at the relevant Point of Delivery a Quantity of Gas in an amount equal to the Scheduled Delivery Quantity, [El Paso] shall immediately notify [Wolf Hollow] of [El Paso's] inability to fully perform its obligations

under this Agreement and [Wolf Hollow] may seek to cover . . . by making such Gas purchases from other suppliers using the Cover Standard, and upon making such purchases shall be entitled to recover from [El Paso damages for having to procure the replacement gas].

Section 21.1(b) then provides that if replacement gas is not available, El Paso can offer replacement power to Wolf Hollow, but Wolf Hollow is not required to accept it. Then, under Section 21.1(c), if replacement power is either not offered or not accepted, Wolf Hollow can purchase replacement power from another supplier and recover the extra cost from El Paso.

Because Article XXI does not contain the word "quality," El Paso argued that Article XXI only applies to gas-quantity issues.

In its summary-judgment response, Wolf Hollow argued that the assignment remedy is not exclusive, pointing out that Article XIV contains no language of exclusivity. Wolf Hollow also addressed Article XXI in two points. First, Wolf Hollow argued that Section 21.1 should be interpreted to cover both gas-quantity and gas-quality issues because they both refer to "delivery failures" generally. Second, Wolf Hollow argued that Section 21.3, which provides for a broad range of remedies during an "Event of Default," enables it to recover replacement-power costs through Section 21.1.[2] The term, "Event of Default," is defined under Section 21.2 to include any "failure by either Party to perform fully any other material provision of this Agreement."[3] Wolf Hollow argued that El Paso's delivery of poor quality gas constituted such a failure.

---

[2] This argument was more directly asserted in Wolf Hollow's motion for summary judgment, which Wolf Hollow incorporated by reference in its summary-judgment response.

[3] The failure must last within certain time constraints, but those time constraints are not a factor in the current discussion.

10

Resolving these competing views is a matter of contract interpretation, which presents us with a question of law. When construing a written contract, our primary goal is to ascertain the intent of the parties as expressed in the agreement. *See Valence Operating Co.*, 164 S.W.3d at 662. Ordinarily, the writing alone is sufficient to express the parties' intentions, because it is the objective, not subjective, intent that controls. *See Matagorda Cnty. Hosp. Dist. v. Burwell*, 189 S.W.3d 738, 740 (Tex. 2006) (per curiam) (citing *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968)). To determine intent, we examine and consider the entire writing in an effort to harmonize and give effect to all provisions of the contract, so that none will be rendered meaningless. *See Valence Operating Co.*, 164 S.W.3d at 662. No single provision controls; rather, all the provisions must be considered with reference to the entire instrument. *See Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). We presume that the parties to the contract intended every clause to have some effect. *See Fein v. R.P.H.*, 68 S.W.3d 260, 266 (Tex. App.—Houston [14th Dist.] 2002, pet. denied) (citing *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996)). Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense. *See Valence Operating Co.*, 164 S.W.3d at 662. We construe contracts from a utilitarian standpoint, bearing in mind the particular business activity sought to be served, and will avoid, when possible, an unreasonable, inequitable, or oppressive construction. *See Frost Nat'l Bank v. L & F Distribs., Ltd.*, 165 S.W.3d 310, 312 (Tex. 2005) (per curiam). Courts are not authorized to rewrite agreements by inserting additional terms, definitions, or provisions that the parties could have included themselves, or by implying terms for which the parties have not bargained. *See Tenneco, Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646

11

(Tex. 1996). In other words, courts cannot make contracts for the parties. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 888 (Tex. 1998).

## I.  Section 21.1 could encompass a gas-quality claim under certain limited circumstances.

Because Section 21.1 uses the word "quantity" rather than "quality," El Paso argues that that section can only apply to gas-quantity claims, and that Wolf Hollow cannot recover replacement-power damages in a claim for gas quality. Wolf Hollow responds that the word "quantity," as used in Section 21.1, is expressed with a capital "Q," and that it is actually part of a defined term, "Quantity of Gas." Under the Supply Agreement, this term means "an amount of Gas expressed in MMBtus," which are thermal units, not units of volume.[4]

Wolf Hollow further observes that the term, "Quantity of Gas," is referenced in both Article XIV and Article XXI. Drawing another connection between the two provisions, Wolf Hollow notes that both articles provide remedies in the event of a "delivery failure." Wolf Hollow suggests that a delivery failure under Article XXI could include a failure by El Paso to deliver gas of a certain quality. Thus, Wolf Hollow argues that Article XXI could apply to a gas-quality claim against El Paso.

We do not agree that Article XIV quality issues are incorporated into Article XXI by the common use of the phrase "delivery failure." Article XVI and Article XXI must stand on their own.

We are not convinced, however, that Article XXI can never apply to a gas-quality claim, as the trial court declared in its fourth declaration. Section 21.1(a) makes clear that Wolf Hollow can recover replacement power if, in addition to other conditions, El Paso fails to deliver "a Quantity of Gas in an amount equal to the Scheduled Delivery Quantity." The Supply Agreement defines the "Scheduled

---

[4] "MMBtus" means one million British thermal units.

12

Delivery Quantity" as "the total Quantity of Gas that [Wolf Hollow] requests [El Paso] to deliver" during any given day.

Under the terms of the Transportation Agreement, gas tendered for delivery must have a gross heating value of not less than 950 Btus per cubic foot. If El Paso delivered gas to Wolf Hollow that fell below this quality standard, and Wolf Hollow received an insufficient quantity of MMBtus to satisfy its scheduled daily request, then by the terms of the Supply Agreement, a gas-quality claim could fall within the scope of Section 21.1 of Article XXI. The trial court's fourth declaration is overbroad to the extent it provides otherwise.

## II. Section 21.1 does not allow Wolf Hollow to recover replacement-power damages in this case.

Applying this interpretation of Section 21.1, we next consider whether the trial court erred in granting summary judgment for El Paso on the ground that the facts alleged by Wolf Hollow do not support recovery of replacement-power damages under Article XXI. Wolf Hollow alleged several facts in connection with its gas-quality claims. One was that El Paso delivered gas that exceeded the hydrocarbon dew point specified in the Transportation Agreement. Another was that El Paso delivered gas that contained heavy liquid hydrocarbons, in breach of the Transportation Agreement's specification that the gas must be "commercially free of all liquids, suspended matter, dust, all gums and gum forming constituents, and other objectionable substances."

These allegations are unrelated to the Btu content of the gas. Thus, they would not satisfy the condition set forth in Section 21.1(a), which provides that replacement-power costs are recoverable only when El Paso does not deliver gas having the scheduled amount of Btus, or more specifically, a "Quantity of Gas in

13

an amount equal to the Scheduled Delivery Quantity." Thus, Wolf Hollow never pled that its gas-quality claim was in fact a gas-quantity issue.

Wolf Hollow alleged elsewhere in its amended counterclaim that El Paso delivered gas with excessive heat content. Wolf Hollow asserted that, on one day, the gas delivered had a heat content exceeding 1150 Btu per standard cubic foot. Operators in the plant were allegedly forced to take emergency measures to reduce output to avoid equipment damage from the gas. As a result of the reduced output, Wolf Hollow claimed that it was required to purchase replacement power to cover its commitments and balance its generation schedule.

This allegation, though clearly related to Btu content, would also fail to authorize recovery of replacement-power damages under Section 21.1(a). Delivering gas with excessive Btus is not equivalent to failing to deliver the scheduled quantity of gas, which is the measure that counts.[5] To pursue damages, Wolf Hollow was required to allege that El Paso failed to deliver a "Quantity of Gas in an amount equal to the Scheduled Delivery Quantity." It never did so.[6] Therefore, Wolf Hollow cannot recover replacement-power damages in its quality claim against El Paso.

## III. Section 21.2 can also apply to gas-quality claims.

We do agree with Wolf Hollow that Section 21.2 can apply to gas-quality claims. As stated above, Section 21.2 defines an "Event of Default" to include any

---

[5] In a separate motion for summary judgment, El Paso made the additional point that there could not be a breach for delivering gas with excessive heat content because the Transportation Agreement sets a floor, but not a ceiling, with respect to heat content. In response, Wolf Hollow answered that it "has not asserted a breach of contract claim relating to BTU content."

[6] El Paso did not deliver any gas when the plant was shut down for repairs. However, El Paso could not be liable for replacement-power costs during that period because Wolf Hollow was not *scheduling* gas for delivery.

14

"failure by either Party to perform fully any other material provision of this Agreement." The Supply Agreement does not expressly denote which provisions are "material," which means that we must apply the common understanding of that word.

Webster's defines "material" as "having real importance or great consequences." *See* Webster's Ninth New Collegiate Dictionary 733 (1984). Black's Law Dictionary also defines the term as "of such a nature that knowledge of the item would affect a person's decision-making process; significant; essential." *See* Black's Law Dictionary 991 (7th ed. 1999). El Paso's duty to supply quality gas, as set forth in Article XIV of the Supply Agreement, is certainly "important" and "significant" to the parties' contractual relationship. Thus, if El Paso delivered gas that failed to meet the minimum quality specifications, the delivery could constitute an Event of Default under Section 21.2. This analysis provides another reason for concluding that the trial court's fourth declaration is overbroad.

## IV.  Section 21.3 does not allow Wolf Hollow to obtain replacement-power damages either.

Wolf Hollow argues that because the delivery of nonconforming gas resulted in an Event of Default under Section 21.2, its remedy during that Event of Default may include the procurement of replacement power under Section 21.1. To support this conclusion, Wolf Hollow relies on Section 21.3 of Article XXI, which provides that a non-defaulting party has the right "to pursue any other remedy provided under this Agreement, or now or hereafter existing at law or in equity or otherwise."[7]

---

[7] The parties amended the Supply Agreement several years after its execution. The amending instrument expressly deleted Section 21.3 "in its entirety" and substituted it with three dependent clauses, but no independent clause. Because dependent clauses are meaningless

We do not agree that the broad language of Section 21.3 can be used as a vehicle for recovering replacement-power damages under Section 21.1. As we held in *Wolf Hollow I*, a claim for replacement power may only succeed if all three conditions under Section 21.1 have been met.[8] The supreme court did not disturb that holding in *Wolf Hollow II* or *Wolf Hollow IV*. In fact, the supreme court reinforced our interpretation of the Supply Agreement when it said that there is a "three-step procedure" for recovering replacement-power costs. *See Wolf Hollow II*, 383 S.W.3d at 145.[9]

If Wolf Hollow is to recover any replacement-power costs in a quality claim against El Paso, the facts of its claim must fit within the specific provisions of Section 21.1, rather than the general provisions of Section 21.3. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133–34 (Tex. 1994) (holding that, when interpreting a contract, the specific provisions control over the general ones). As noted above, no such facts were alleged in this case. Accordingly, we hold that the trial court did not err in granting summary judgment for El Paso on Wolf Hollow's claim for replacement-power damages under Article XXI.

---

without an independent clause, we presume that the parties did not intend to delete the independent clause that originally opened Section 21.3. That clause stated, "During any Event of Default, the Party not in default shall have the right," followed then by a list of remedies written in the form of dependent clauses.

[8] We said: "When read in its entirety, section 21.1 makes it clear that the provisions of subsection (c) apply only when the steps in subsections (a) and (b) have been followed. More specifically, Wolf Hollow can be reimbursed for replacement power only if: (1) under subsection (a), El Paso is unable to deliver a scheduled quantity of gas; (2) under subsection (b), Wolf Hollow has been unsuccessful in attempting to cover by purchasing gas from other suppliers; and (3) under subsection (c), El Paso was unable to provide replacement power or Wolf Hollow rejected El Paso's offer of replacement power." *Wolf Hollow I*, 329 S.W.3d at 639.

[9] The supreme court disagreed, however, with our statement in *Wolf Hollow I* that Wolf Hollow did not comply with all of the procedures for recovering replacement-power costs. *See Wolf Hollow II*, 383 S.W.3d at 145 ("The court of appeals held that Wolf Hollow did not comply with the first two steps, which are prerequisites to the third. But there is evidence that it did.").

Wolf Hollow argues that this interpretation renders section 21.3 meaningless, but Wolf Hollow could still assert a claim for direct damages under this section. To be sure, Wolf Hollow did not seek such damages in this particular case because it had no direct damages. The lack of such damages on these facts, however, does not mean that the section is meaningless in the context of the parties' entire relationship.

## CONCLUSION

Because there are some circumstances in which Article XXI could apply to a gas-quality claim, the trial court's fourth declaration is overbroad. We accordingly vacate the fourth declaration. We also vacate the trial court's third declaration, in accordance with the supreme court's opinions in *Wolf Hollow II* and *Wolf Hollow IV*, and El Paso's concession during oral argument. As modified, the trial court's judgment that Wolf Hollow take nothing on its claims against El Paso is affirmed.


/s/ Tracy Christopher
   Justice


Panel consists of Chief Justice Frost and Justices Christopher and Busby.