David M. **BUTLER**, Appellant,

v.

**COMMISSION FOR LAWYER DISCIPLINE**, Appellee.

No. 13–95–022–CV.

Court of Appeals of Texas, Corpus Christi.

Aug. 1, 1996.

Rehearing Overruled Sept. 19, 1996.

---

David M. Butler, Butler and Holgate, Corpus Christi, for Appellant.

William E. Minkley, Office of General Counsel, Linda Acevedo, Assistant General Counsel, James M. McCormack, General Counsel, Austin, for Appellee.

Before DORSEY, FEDERICO G. HINOJOSA, Jr. and RODRIGUEZ, JJ.

## OPINION

RODRIGUEZ, Justice.

The Commission for Lawyer Discipline brought this disciplinary action for professional misconduct against David M. Butler. The trial court found violations of Disciplinary Rules 1.14(c) and 8.04(a)(3). Butler challenges the legal and factual sufficiency of the evidence, admission of videotaped testimony, exclusion of a witness' testimony, and imposition of sanctions. We affirm.

## BACKGROUND

Appellant, David M. Butler, represented Gerald Prado in an ongoing worker's compensation suit in Nueces County, Texas. At the time, Prado was also facing a criminal charge of injury to a child in Harris County, Texas. Concerned that a criminal conviction and prison sentence would diminish the value of the worker's compensation claim, Butler contacted Randy Schaffer, a criminal defense attorney in Harris County, seeking representation for Prado in the criminal matter. According to Schaffer, Butler asked whether Schaffer would accept an assignment of the worker's compensation case settlement for his attorney's fees. Schaffer accepted on behalf of an associate, Cynthia Henley, who took on Prado's case and accepted the assignment, signed and personally guaranteed by Butler, in the amount of $7,500.

After a relatively successful representation of Prado in the criminal proceedings, Henley pursued payment from Butler who informed her that Prado's civil case was still pending. When the case finally settled, Butler informed Prado that Schaffer and Henley did not have to be paid if Prado stated in writing that he did not want to pay them. Prado prepared a written statement as Butler instructed, and Schaffer and Henley were neither paid nor informed of Prado's "refusal" to pay.

When Henley and Schaffer inquired about the case several weeks later, Butler's first response was that he had forgotten to inform them that Prado insisted that they not be paid. Later, Butler informed Henley by letter that he was out of the country when he found out about Prado's refusal to pay, and that he had no choice but to disburse all funds to Prado.

Schaffer sued Butler for the fees and filed a grievance with the local State Bar committee. The lawsuit resulted in a judgment against Butler who ultimately paid Schaffer $8,000. The Commission for Lawyer Discipline brought the present action against Butler alleging violations of Rules 1.14(a), 1.14(b), 1.14(c), and/or 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct.

Following a trial to the bench, the trial court found that Butler engaged in professional misconduct. In its findings of fact, the trial court found that by suggesting, drafting, and consenting to the assignment, Butler intended to deceive, misrepresent, and commit fraud. The court also found that Butler knew that Henley and Schaffer claimed an interest in the settlement, but failed to promptly notify them that the worker's compensation proceeds had been received, and, that he did not retain their portion of the fees or keep them separate until the disputed matter was resolved. The court concluded that Butler's conduct amounted to violations of Rules 1.14(c) and 8.04(a)(3) of the Texas Disciplinary Rules of Professional Conduct, and ordered Butler suspended from the practice of law for six months (active for one month and probated for two years) and ordered that he pay $5,100 in attorney's fees to the Commission.

## LEGAL AND FACTUAL SUFFICIENCY CHALLENGE

By his first and second points of error, Butler challenges the trial court's findings.

■ Findings of fact entered in a case tried to the bench are of the same force and dignity as a jury's verdict upon special questions. *Guerra v. Garza,* 865 S.W.2d 573, 575 (Tex.App.—Corpus Christi 1993, writ dism'd w.o.j.) (*citing City of Clute v. City of Lake Jackson,* 559 S.W.2d 391, 395 (Tex.Civ. App.—Houston [14th Dist.] 1977, writ ref'd n.r.e.)). The trial court's findings of fact are reviewable for legal and factual sufficiency of the evidence to support them by the same standards as are applied in reviewing the legal and factual sufficiency of the evidence supporting a jury's answer to a special question. *Guerra,* 865 S.W.2d at 575.

■ When reviewing a legal insufficiency point of error, we consider only the evidence and inferences, when viewed in their most favorable light, that tend to support the finding and disregard any evidence and inferences to the contrary. *Sherman v. First Nat'l Bank,* 760 S.W.2d 240, 242 (Tex.1988). Under such a point, we are limited to reviewing only the evidence that tends to support the finding. *Id.* If there is any evidence of

probative force, that is, more than a scintilla of evidence that supports the finding, we must overrule the point, and uphold the finding. *Id.*

■ When reviewing a factual insufficiency point, we examine all of the evidence, both the evidence that supports the finding and the evidence that controverts the finding. *Lofton v. Texas Brine Corp.,* 720 S.W.2d 804, 805 (Tex.1986); *Otis Elevator Co. v. Joseph,* 749 S.W.2d 920, 923 (Tex.App.—Houston [1st Dist.] 1988, no writ). Under this type of point, we can set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

## A. Rule 1.14(c)—Safekeeping Property

■ Rule 1.14(c) provides that

(c) When in the course of representation a lawyer is in possession of funds or other property in which both the lawyer and other person claim interest, the property shall be kept separate by the lawyer until there is an accounting and severance of their interest. All funds in a trust or escrow account shall be disbursed only to those persons entitled to receive them by virtue of the representation or by law. If a dispute arises concerning their respective interests, the portion in dispute shall be kept separated by the lawyer until the dispute is resolved, and the undisputed portion shall be distributed appropriately.

The evidence presented at trial established that Butler was in possession of funds obtained in the course of representing Prado in the worker's compensation suit. Butler testified that he knew that Schaffer and Henley believed they had an interest in the settlement money, and that he did not separate the disputed portion. He testified that, after subtracting his own fees and advances, he gave the remainder to his clients because they were demanding their money.

Butler now contends that Schaffer and Henley could not have claimed a valid interest in the money because the assignment, in

hindsight, was void as a matter of law.[1] He further claims that Schaffer and Henley were not entitled to receive funds because the rule mandates that all funds in trust "shall be distributed only to those persons entitled to receive them by virtue of representation or by law." Butler concludes that since Schaffer and Henley had no legal right to the funds, there was no "dispute with another person claiming interest in the same property," and thus he was not required to set aside any money.

Nevertheless, Butler testified that at the time Prado arrived for his money, Butler was supposedly unaware that the assignment was void and did not realize it was void until after the grievance was filed. Thus, he had no valid reason to question Schaffer's and Henley's interest in the money. Finally, Butler testified that he cautioned Prado against refusing to pay. This indicates that he knew the $7,500 was in dispute and that he therefore should have set the money aside until the dispute was resolved.

We conclude that the evidence was legally sufficient—that there was more than a scintilla of evidence—to support a finding of a Rule 1.14(c) violation. Further, having examined both the evidence that supports the finding and the evidence that controverts the finding, we conclude that the evidence was also factually sufficient to support the trial court's finding. At the time Butler decided how he would handle the disputed funds, he was aware of the requirements of Rule 1.14(c), yet consciously violated the rule. The trial court's finding was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule Butler's first point of error.

## B. Rule 8.04(a)(3)—Misconduct

■ Rule 8.04(a)(3) provides

(a) A lawyer shall not:

. . . .

(3) engage in conduct involving dishonesty, fraud, deceit, or misrepresentation;

At issue in this case is (1) whether Butler knew that the assignment was void, revocable, or otherwise unenforceable at the time he proposed it; and (2) whether he utilized the assignment to deceive, misrepresent, and fraudulently induce Schaffer and Henley into accepting Prado's case.

Schaffer testified that Butler contacted him about Prado's criminal case and indicated that Prado had no funds to pay his fee. Butler then informed him about the worker's compensation case and expressed his concern that the value of the case might be diminished if Prado was convicted and sent to prison. According to Schaffer, Butler asked if he would take an assignment from the settlement in the worker's compensation case. Because the prospect for recovery was long-term, Schaffer explained that he was not comfortable taking the case. Schaffer also testified that in a second conversation, Butler suggested that he prepare an assignment and Schaffer agreed on the condition that Butler personally guarantee it.

Butler testified that more than fifty percent of his practice consists of worker's compensation claims. He admitted that at the time he drafted the assignment, he knew he had "constructed an instrument that [he] believed to be not an irrevocable assignment," and that the limitations imposed on assignability of benefits paid under a Workman's Compensation claim "could have been somewhere in the back of [his] mind" but "it certainly wasn't something that was present and guided me in making this assignment."

Santa Dinn, Butler's secretary and office manager, testified that she prepared the disbursement checks in Prado's case, including the $7,500 assignment to Schaffer and Henley. When the checks were presented to Butler for his signature, he told her that the $7,500 did not have to be paid. He instructed her to "tell Gerald that if he makes us a

---

1. Article 8306, Section 3 of the Revised Civil Statutes provides that "All compensation allowed under the succeeding sections herein shall be exempt from garnishment, attachment, judgment and all other suits or claims, and no such right of action and no such compensation and no part thereof or of either shall be assignable, except as otherwise herein provided, and any attempt to assign the same shall be void."

handwritten letter or a handwritten statement saying that he doesn't authorize me to release these funds that we can issue this money to him." When probed further, Dinn conceded that Butler had actually instructed her to "tell Mr. Prado they don't have to pay him shit." Dinn testified that Prado was surprised he could receive an extra $7,500, but willingly signed the statement prepared by his wife.

Two weeks after the money was distributed, and for the third time since Prado's criminal case was concluded, Henley inquired about the status of the settlement money. According to Henley, Butler told her he had "inadvertently forgotten" to notify them that he had received the money. In a conversation with Schaffer immediately thereafter, Butler's excuse was that "he did not send a check ... because Mr. Prado told him not to." When asked why it had not occurred to him to inform Schaffer of the problem, Butler said he must have forgotten, but that in any event he "assigned it subject to the client agreeing to it and [Prado] didn't agree."

Prado testified that he understood the agreement provided that Henley "was supposed to see money before I saw money and before Mr. Butler saw money." He confirmed that "when you sign a contract you're supposed to go with that contract," and that, therefore, he signed the assignment with the understanding that Henley would be paid first. Prado further stated that Butler laughed after telling him Schaffer and Henley did not have to be paid. Prado also recounted that several months after the settlement, he received a call from Butler at work. His recollection of the telephone call was as follows:

> I received a phone call at the Water Street Oyster Bar one afternoon. It was from Mr. Butler. He did talk to me and told me that they were going to come after us. I said, "I'm not going to lie for you or go to jail for nobody...." [H]e sounded like he was in a lot of trouble, and when he said that he needed help—just like he had helped me a lot—I told him, "No, I'm not

going to lie and I'm not going to go to jail when there was a contract made."

Once again, we conclude that the evidence is more than adequate to overcome Butler's legal and factual sufficiency challenges to the finding of a Rule 8.04(a)(3) violation. We overrule Butler's second point of error.

## ADMISSION OF GRIEVANCE HEARING TESTIMONY

■ By his third point of error, Butler claims the trial court erred in admitting his videotaped testimony from the local grievance investigatory hearing.

Initially, the Commission for Lawyer Discipline refused to produce the videotape during discovery. The Commission asserted a privilege pursuant to rule 2.11, 2.15, and 15.10 of the Texas Rules of Disciplinary Procedure. The rules, in essence, provide that the information is confidential and/or privileged and not subject to discovery.[2] *See Greenspan v. State of Texas*, 618 S.W.2d 939, 941 (Tex.Civ.App.—Fort Worth 1981, writ ref'd n.r.e.) (transcript of proceedings before the grievance committees was privileged because it was the written statements of witnesses made subsequent to the occurrence in question upon which the suit is based and made in connection with the investigation of the claim).

At trial, however, the Commission sought to introduce the video for purposes of impeachment. While Butler agreed that the substance of the tape was admissible, he objected to the Commission claiming privilege as a basis for not producing the tape during discovery, and then later using it in trial. Butler petitioned the court as follows:

> I don't know how we can protect ourselves about evidence that we haven't seen and don't have a fair chance to have witnesses look at it, expert witnesses, to have our client look at it to make proper objections to or any of that thing, any of those matters. That's just fundamental fairness required. So, we would strongly object to introduction of that without some sort of

---

**2.** Butler did not move to compel the production of the tape. *See McKinney v. National Union Fire Ins. Co.,* 772 S.W.2d 72, 75 (Tex.1989)(re-

sponsibility for obtaining a hearing on discovery matters is on the party requesting discovery).

protection to at least allow us to look at it, have it transcribed, to have it produced and to have an opportunity to produce witnesses to rebut it if we think it's important.

The court then ordered that Butler be provided with a copy of the tape and recessed until the following morning. Thus, Butler was given the opportunity to review his testimony and make objections. None were offered.

Butler argues for the first time on appeal that admission of the video violated Texas Rule of Civil Procedure 166b(3)(c) which provides as follows:

> c. *Witness Statements.* The written statements of potential witnesses and parties, when made subsequent to the occurrence or transaction upon which the suit is based and in connection with the prosecution, ... of the particular suit, ... except that persons, whether parties or not, shall be entitled to obtain, upon request, copies of statements they have previously made concerning the action or its subject matter and which are in the possession ... of any party.

TEX. R. CIV. P. 166b(3)(c). However, the court allowed Butler to view the video before its admission, thus, Butler received the relief he requested. We overrule Butler's third point of error.

## EXCLUSION OF HEARSAY TESTIMONY

■ By his fourth point of error, Butler argues that the trial court improperly excluded the testimony of Gerald Prado's wife, Patricia Prado. While Mrs. Prado testified, Butler asked her whether Gerald Prado had ever "discussed with [her] or changed his mind about sending the money to the lawyers in Houston out of his settlement." The Commission objected on the ground of hearsay.[3] After the court sustained the objection, Butler presented a bill of exception.

Butler contends that the trial court erred in excluding Mrs. Prado's testimony because the bill of exception revealed that her re-

sponse went to Gerald's state of mind[4] regarding his intent to pay Henley. However, Butler failed to urge the "state of mind" or other hearsay exception during the trial. The court does not have the burden to apprehend grounds for overcoming a hearsay objection. In fact, the Texas Supreme Court has held that the party seeking to have hearsay declarations admitted as an exception to the general rule has the burden of showing that they are within the exception. *Skillern & Sons, Inc. v. Rosen,* 359 S.W.2d 298 (Tex. 1962); *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 676 (Tex.App.—Texarkana 1991, writ denied), *cert. denied,* 508 U.S. 909, 509 U.S. 923, 933, 113 S.Ct. 2339, 3037, 3064, 124 L.Ed.2d 250, 125 L.Ed.2d 724, 746 (1993). Accordingly, we conclude that Butler waived error on this point. We overrule the fourth point of error.

## SANCTIONS

■ The fifth point of error reads as follows:

> The trial court erred in finding professional misconduct on the part of Appellant sufficient to warrant the payment of The Commission's attorney's fees and the levy of an active suspension of thirty days of a six month suspension probated for two years.

We interpret this point as a challenge to the trial court's finding of professional misconduct under Rule 3.09 of the Texas Rules of Disciplinary Procedure. Rule 3.09 provides, in relevant part, that

> If the court finds that the Respondent's conduct does constitute Professional Misconduct, the court shall determine the appropriate Sanction or Sanctions to be imposed.

TEX. R. DISCIPLINARY P. 3.09 (1992), *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. (Vernon 1996). Rule 1.06(Q) provides that "Professional Misconduct" includes "Acts or omissions by an attorney, individually or in concert with another person or persons, that violate one or more of the Texas

---

**3.** TEX. R. CIV. EVID. 801(d).

**4.** TEX. R. CIV. EVID. 803(3).

Disciplinary Rules of Professional Conduct." TEX. R. DISCIPLINARY P. 1.06(Q).

In essence, Butler is reasserting his first and second points of error which we have overruled. Nevertheless, construing his point liberally, we infer that Butler is also challenging the extent of sanctions levied against him.

 The judgment of a trial court in a disciplinary proceeding may be so light, or so heavy, as to constitute an abuse of discretion. *State Bar of Texas v. Kilpatrick,* 874 S.W.2d 656, 659 (Tex.1994). However, the trial court has broad discretion to determine whether an attorney guilty of professional misconduct should be reprimanded, suspended, or disbarred. *Id.* In determining the appropriate sanction for attorney misconduct, a trial court must consider the nature and degree of the professional misconduct, the seriousness of and circumstances surrounding the misconduct, the loss or damage to clients, the damage to the profession, the assurance that those who seek legal services in the future will be insulated from the type of misconduct found, the profit to the attorney, the avoidance of repetition, the deterrent effect on others, the maintenance of respect for the legal profession, the trial of the case, and other relevant evidence concerning the attorney's personal and professional background. TEX. R. DISCIPLINARY P. 3.10 (1992). The court may, in its discretion, hold a separate evidentiary hearing and take evidence on these issues. *Id.*

As for the portion of the sanctions awarding attorney's fees to the State Bar, William E. Minkley, the State Bar's attorney, testified that: the State Bar Rules provide for an award of attorney's fees to the prosecuting attorney in disciplinary proceedings;[5] he had several years' experience as an attorney; he spent not less than 32 hours preparing for trial in this case; the usual and customary fee for litigation in matters of this nature was $100 per hour; and he estimated that, in the event of an appeal, the attorney fees would be a total of about $2,500. No evidence to the contrary was presented. We conclude that this evidence is factually sufficient to support the award of $5,100 in attorney's fees.

Additionally, the court heard testimony that Butler had been sanctioned for misconduct by the State Bar twice, and that he consistently denied any wrongdoing. In light of these facts and circumstances, we cannot say that the sanctions imposed by the trial court were an abuse of discretion. We overrule Butler's fifth point of error.

We AFFIRM the judgment of the trial court.

---

5. The State Bar Rules authorize an award of attorney's fees in disciplinary actions. See State Bar Rule, art. X, § 8(7) (1988); *Hanners v. State Bar of Texas,* 860 S.W.2d 903, 912 (Tex.App.—Dallas, 1993, no writ).