

# NUMBER 13-23-00009-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE STATE BAR OF TEXAS

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

**Before Justices Benavides, Tijerina, and Peña**
**Memorandum Opinion by Justice Benavides**[1]

Relator, the State Bar of Texas acting through the Commission for Lawyer Discipline, filed a petition for writ of mandamus asserting that the trial court abused its discretion by: (1) allowing Marco "Mark" A. Cantu, who was disbarred, to take the Texas Bar Examination without meeting the requirements of the Texas Rules of Disciplinary Procedure; and (2) abating its decision on granting Cantu's petition for reinstatement

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so. When granting relief, the court must hand down an opinion as in any other case."); *id.* R. 47.1 (requiring the appellate courts to "hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).

pending the receipt of Cantu's bar exam results.[2] We conditionally grant the petition for writ of mandamus.

## I. BACKGROUND

Cantu was disbarred on April 11, 2016. This Court ultimately affirmed Cantu's judgment of disbarment on appeal. *Cantu v. Comm'n for Law. Discipline*, No. 13-16-00332-CV, 2020 WL 7064806, at *1 (Tex. App.—Corpus Christi–Edinburg Dec. 3, 2020, no pet.) (mem. op. on remand) (affirming judgment of disbarment).

On February 17, 2022, Cantu filed an "Original Petition for Reinstatement" in one of the district courts of Hidalgo County, Texas. The Texas Rules of Disciplinary Procedure provide that petitions for reinstatement must include specific declarations, including a statement that "the petitioner has paid all costs and fines assessed in connection with the Disciplinary Proceeding or Disciplinary Action that resulted in his or her disbarment or resignation." TEX. RULES DISCIPLINARY P. R. 11.02(D), *reprinted in* TEX. GOV'T CODE ANN., tit.2, subtit. G, app. A-1. Cantu's petition for reinstatement failed to contain this statement, and instead included the allegation that:

> 5.    [Cantu] never paid restitution to any person because there was no financial loss by the misconduct. All cost[s] and fines assessed against [Cantu] in connection with the [d]isciplinary proceedings have not been paid. [Cantu] hereby asks the Court to waive the approximately $145,000.00 dollars in fines and fees assessed against [him].

---

[2] This petition for writ of mandamus arises from trial court cause number C-0596-22-I, originally filed in the 398th District Court of Hidalgo County, Texas. On September 6, 2022, the presiding judge of that court, the Honorable Keno Vasquez, signed an "Order of Transfer" stating that the case was ordered transferred from that court "by consent and order of the District Judges of Hidalgo County District Courts" to the 370th District Court of Hidalgo County, Texas, with the Honorable Noe Gonzalez presiding. Judge Gonzalez is the respondent in this original proceeding. *See id.* R. 52.2.

Cantu's petition was verified and supported by an "Affidavit of Indigency," prepared by Cantu, stating in relevant part that:

> In 2008[,] I filed for Chapter 11 Bankruptcy. After three years I was converted to a Chapter 7 Total Liquidation. I do not own any properties, nor do I possess any savings in any banks in the United States. I currently rent a house in McAllen, Texas. I do not have the money to pay the [relator] the $145,000.00 dollars in fees and fines. I am filing this Petition for Reinstatement to allow me to take the State Bar exam and start to practice law once again.

On March 21, 2022, relator filed a "Plea to the Jurisdiction, Motion to Dismiss, Original Answer, and Special Exceptions Subject to Plea." In terms of jurisdictional allegations, relator alleged that Cantu had not paid all costs and fines assessed in his disbarment:

> [Cantu's] judgment of [d]isbarment awarded [relator] $84,921.48 in attorney's fees and costs, with interest, and further conditional attorney's fees on appeal to the court of appeals in the amount of $25,000 and an additional $10,000 for appeal to the Supreme Court of Texas. After [Cantu's] appeal to the 13[th] Court of Appeals and remand thereto from the Supreme Court of Texas, [Cantu] has failed to pay [relator] such fees and costs, and, with accrued interest, **[Cantu] currently owes [relator] $144,044.08 in connection with his disbarment proceedings**. The judgment of disbarment against [Cantu] states, "Payment of all fees shall be a condition precedent to any application for reinstatement to the practice of law by [relator]." Pursuant to Rule 54 [of the Texas Rules of Civil Procedure], [relator] specifically denies that [Cantu] has satisfied this condition precedent.

(Footnotes omitted). This pleading was verified and supported by a copy of the judgment of disbarment. Relator thus sought dismissal of Cantu's petition for reinstatement.

On June 23, 2022, Cantu filed a "Motion for Status Conference" in which he alleged that he was "seeking to retake his [bar] exam on or about February 2023." Cantu requested the court to "[o]rder the [relator] to provide [Cantu] with a breakdown of the proximately $150,000.00 in fines that [he] has to pay to [relator] to be reinstated."

3

The parties thereafter filed briefing relative to, *inter alia*, the requirement for a petitioner to pay all costs and fines imposed by a judgment of disbarment relative to Cantu's desire to retake the bar examination. The trial court held hearings on these matters on September 19, 2022, and September 30, 2022. On October 6, 2022, the trial court signed an "Order Permitting Taking Bar Examination." This order provides:

> Came to be heard the above referenced matter. The Court, having considered the motions, responses, representations of the parties, and conducting its own research, finds that such relief should be granted in part at this time. The Court specifically finds that the $145,000 is penal . . . . Accordingly, it is hereby
>
> ORDERED that [Cantu] will sit and take the Texas Bar Exam in February 2023, without paying any portion of the $145,000 penal sum[.] He will, however, be required to pay the same costs associated with taking the bar exam, imposed on all other applicants.
>
> [Cantu] will be required to comply with and or be afforded any rights or responsibilities under other rules, regulations, and procedures imposed on parties taking the Texas Bar examination. The other issues in this matter are abated until [Cantu's] test result[s] on the bar examination are obtained. In the event [that Cantu] successfully passes the Texas Bar examination, the Court will consider the other factors necessary to reinstate [Cantu] including payment of the penal fine. By this order this court is not reinstating [Cantu's] law license.

On October 21, 2022, relator filed a "Motion for Reconsideration" of this order. On December 8, 2022, the trial court signed an "Order Regarding [Relator's] Motion for Reconsideration, Plea to the Jurisdiction[,] and Motion to Dismiss." This order affirmed the October 6, 2022 order allowing Cantu to take the bar examination and denied relator's plea to the jurisdiction and motion to dismiss.[3]

---

[3] The civil practice and remedies code provides for an interlocutory appeal from an order that "grants or denies a plea to the jurisdiction by a governmental unit as that term is defined in [§] 101.001." TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8); *see* § 101.001(3) ("Governmental unit" means (A) this state and all the several agencies of government that collectively constitute the government of this state, including other agencies bearing different designations, and all departments, bureaus, boards, commissions, offices, agencies, councils, and courts). The initial order in this case does not include a ruling on relator's plea to the jurisdiction, but states that "[t]he other issues in this matter are abated until [Cantu's]

4

This original proceeding ensued. By one issue, relator contends that the trial court abused its discretion by: (1) allowing Cantu to take the Texas Bar Exam in February 2023 without paying any portion of the attorney's fees and expenses that Cantu was ordered to pay as a condition precedent to any application for reinstatement in Cantu's judgment of disbarment; and (2) abating its decision on reinstatement until Cantu obtains the results of his bar exam. Relator further filed a motion for temporary relief seeking to stay the trial court's order pending resolution of this original proceeding.

This Court granted relator's motion for temporary relief and requested and received a response to the petition for writ of mandamus from Cantu. *See* TEX. R. APP. P. 52.4, 52.10. In summary, Cantu contends that he "cannot afford" to pay the "penal sums" at issue and asserts that mandamus relief is inappropriate to address the order at issue in this original proceeding.

## II.     STANDARD OF REVIEW

Mandamus is an extraordinary and discretionary remedy. *See In re Allstate Indem. Co.*, 622 S.W.3d 870, 883 (Tex. 2021) (orig. proceeding); *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 138 (Tex. 2004) (orig. proceeding). The relator must show that: (1) the trial court abused its discretion, and (2) the relator lacks an adequate remedy on appeal. *In re*

---

test result[s] on the bar examination are obtained." However, the order on reconsideration denies relator's plea. Relator did not file an interlocutory appeal of the jurisdictional ruling, and instead assails the trial court's ruling by mandamus. Relator's arguments in this proceeding do not directly concern jurisdiction and focus instead on the trial court's authority to issue interim relief in the form of allowing Cantu to take the bar exam, and relator does not request that we order the trial court to dismiss the case for lack of jurisdiction. Nor does Cantu brief or analyze this matter as though it were premised on the denial of a plea to the jurisdiction. Accordingly, we focus on the specific issue presented in this original proceeding, and we express no opinion regarding jurisdiction. *Cf. Bonsmara Nat. Beef Co., LLC v. Hart of Tex. Cattle Feeders, LLC*, 603 S.W.3d 385, 387 (Tex. 2020) ("We . . . hold that a party does not forfeit its right to challenge a ruling on appeal from a final judgment simply by opting not to pursue an interlocutory appeal of that ruling.").

*USAA Gen. Indem. Co.*, 624 S.W.3d 782, 787 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135–36; *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

### III.    RIPENESS

We first address our jurisdiction over this petition for writ of mandamus. Cantu contends that this petition for writ of mandamus requests relief which is "unripe," "especially since a final judgment has not been entered" and the trial court has expressly reserved ruling regarding whether Cantu will ultimately be entitled to a judgment of reinstatement. Cantu thus asserts that we lack subject matter jurisdiction to entertain the relator's request for relief. Cantu further argues that his "financial condition may improve so he can pay the punishment" and "the parameters of the law might change."

Courts must avoid the premature adjudication of an issue. *See generally Robinson v. Parker*, 353 S.W.3d 753, 756 (Tex. 2011) (discussing the ripeness doctrine and stating that courts should avoid "advising what the law would be on a hypothetical set of facts"); *see also McAllen Med. Ctr., Inc. v. Cortez*, 66 S.W.3d 227, 232 (Tex. 2001) (discussing advisory opinions). Stated otherwise, "we are prohibited from issuing advisory opinions by way of writ of mandamus or otherwise." *In re Kuster*, 363 S.W.3d 287, 290 (Tex. App.—Amarillo 2012, orig. proceeding). Thus, we do not grant "mandamus relief based upon events that have not yet occurred and remain merely hypothetical." *Id.*; *see, e.g., In re Ford Motor Co.*, 124 S.W.3d 147 (Tex. 2003) (orig. proceeding) (per curiam) (concluding that a petition for writ of mandamus was premature where the parties had not agreed to, and the trial court had not issued, an order prescribing a search method for the production of databases); *In re Rodriguez*, 409 S.W.3d 178, 180 (Tex. App.—Beaumont 2013, orig.

6

proceeding) (per curiam) (concluding that it would be premature to issue mandamus when the issues depended on contingent events and future matters); *In re Watson*, 259 S.W.3d 390, 392–93 (Tex. App.—Eastland 2008, orig. proceeding) (concluding that mandamus could not be granted because the conditional nature of the discovery order meant the trial court had not "fully exercised its discretion" and thus the relator presented nothing for the court's review).

We disagree that relator's petition for writ of mandamus seeks an advisory opinion, or that its resolution requires speculation or depends on the happening of future events. The trial court has issued an order allowing Cantu to take the bar exam and abating the other issues in the reinstatement case. The propriety of this order allowing Cantu to take the bar exam is not contingent on future events, such as whether Cantu passes the bar exam or not, or whether Cantu amasses the funds to pay the fees. Accordingly, we reject Cantu's contentions regarding the ripeness of this mandamus proceeding.

## IV. REINSTATEMENT

The Texas Rules of Disciplinary Procedure (Rules) establish "the process and procedures for reinstatement after disbarment." *Eggert v. State Bar of Tex.*, 606 S.W.3d 61, 64 (Tex. App.—Houston [1st Dist.] 2020, no pet.); *see* TEX. RULES DISCIPLINARY P. R. 11.01–.08, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G, app. A-1. As relevant to this original proceeding, "[a] disbarred person . . . may, at any time after the expiration of five years from the date of final judgment of disbarment . . . petition the district court of the county of his or her residence for reinstatement." TEX. RULES DISCIPLINARY P. R. 11.01; *see Eggert*, 606 S.W.3d at 64. The Rules specify that a person seeking reinstatement must file a verified petition for reinstatement setting forth:

7

A.     The name, age, and residential address of the petitioner.

B.     The offenses, misconduct, or convictions upon which the disbarment or resignation was based.

C.     The name of the body or entity where the Disciplinary Proceeding or Disciplinary Action was adjudicated and the identity of the Committee before whom the Just Cause hearing was held, if any.

D.     A statement that the petitioner has made restitution to all persons, if any, naming them and their current addresses, who may have suffered financial loss by reason of the offenses, misconduct, or Serious Crimes for which the petitioner was disbarred or resigned, and that the petitioner has paid all costs and fines assessed in connection with the Disciplinary Proceeding or Disciplinary Action that resulted in his or her disbarment or resignation.

E.     A statement that at the time of the filing of the petition the petitioner is of good moral character, possesses the mental and emotional fitness to practice law, and during the five years immediately preceding the filing of the petition, has been living a life of exemplary conduct.

F.     A statement that the petitioner has recently read and understands the Texas Disciplinary Rules of Professional Conduct; that he or she has recently read and understands the Texas Lawyer's Creed—A Mandate For Professionalism; that he or she has a current knowledge of the law; and that the public and profession will be served by the petitioner's reinstatement.

G.     A listing of the petitioner's occupations from the date of disbarment or resignation, including the names and current addresses of all partners, associates, and employers, if any, and the dates and duration of all such relationships and employment.

H.     A statement listing all residences maintained from the date of disbarment or resignation, and the current names and addresses of all landlords.

I.     A statement of the dates, cause numbers, courts, and the general nature of all civil actions in which the petitioner was a party or in which he or she claimed an interest, and that were pending at any time from the date of disbarment or resignation.

J.     A statement of the dates, cause numbers, courts, the general nature and disposition of all matters pending at any time from the date of

8

disbarment or resignation and involving the prosecution of the petitioner for any crime, felony, or misdemeanor, together with the names and current addresses of all complaining persons in each such matter.

K.    A statement whether any application for a license requiring proof of good moral character for its procurement was filed at any time after the disbarment or resignation and, for each application, the name and address of the licensing authority and the disposition of the application.

L.    A statement explaining any proceeding after the date of disbarment or resignation concerning the petitioner's standing as a member of any profession or organization or holder of any license or office that involved censure, removal, suspension of license, revocation of any license, or discipline of the petitioner and the disposition thereof, and the name and address of each authority in possession of the records.

M.    A statement whether any allegations or charges, formal or informal, of fraud were made or claimed against the petitioner at any time after the disbarment or resignation and the names and current addresses of the persons or entities making such allegations or charges.

The petitioner has a duty to amend and keep current all information in the petition until the petition has been heard and determined by the trial court.

TEX. RULES DISCIPLINARY P. R. 11.02. This rule is mandatory in nature and expressly provides that the petition "shall be verified and shall set forth all of the [delineated] information." *Id.* "The term 'shall,' as the Legislature has explained in the Code Construction Act, 'imposes a duty.'" *Garza v. Harrison*, 574 S.W.3d 389, 402 (Tex. 2019) (quoting TEX. GOV'T CODE ANN. § 311.016(2)); *see Perryman v. Spartan Tex. Six Cap. Partners, Ltd.*, 546 S.W.3d 110, 131 (Tex. 2018) ("By its plain and common meaning, 'shall' denotes mandatory action."). The Rules direct the petitioner to serve notice of a petition for reinstatement on the Chief Disciplinary Counsel and to publish the notice in the Texas Bar Journal. TEX. RULES DISCIPLINARY P. R. 11.04.

9

"The scheme of the [Rules] is to require a petitioner for reinstatement to obtain a judicial determination of the essential conditions for reinstatement." *Bd. of Law Exam'rs of State of Tex. v. Gabriel*, 953 S.W.2d 227, 228 (Tex. 1997) (orig. proceeding). Under the Rules, this determination results from an adversarial and evidentiary proceeding. *See* TEX. RULES DISCIPLINARY P. R. 11.06 ("No judgment of reinstatement may be rendered by default."); *id.* R. 11.03 (stating that the petitioner has the burden to establish its case "by a preponderance of the evidence"); *id.* R. 11.05 (allowing the trial court to consider evidence "relevant to the issues"); *id.* R. 11.06 (discussing the trial court's ruling "after hearing all the evidence"). The Texas Rules of Civil Procedure apply to a reinstatement proceeding except when they conflict with the Rules. *See id.* at R. 11.04. The trial court determines all questions of law and fact, and the petitioner is not entitled to a jury trial. *Id.*

In determining the petitioner's fitness for reinstatement, the trial court may consider:

A.  Evidence concerning the nature and degree of Professional Misconduct for which the petitioner was disbarred or resigned and the circumstances attending the offenses.

B.  The petitioner's understanding of the serious nature of the acts for which he or she was disbarred or resigned.

C.  The petitioner's conduct during the Disciplinary Proceeding and Disciplinary Action.

D.  The profit to the petitioner and the hardship to others.

E.  The petitioner's attitude toward the administration of justice and the practice of law.

F.  The petitioner's good works and other accomplishments.

G.  Any other evidence relevant to the issues of the petitioner's fitness to practice law and the likelihood that the petitioner will not engage in further misconduct.

10

*Id.* R. 11.05. This list is not exclusive, and the trial court may consider "any other relevant matters." *Id.*

"The petitioner has the burden of establishing by a preponderance of the evidence that the best interests of the public and the profession, as well as the ends of justice, would be served by his or her reinstatement." *Id.* R. 11.03. The trial court may render judgment authorizing the petitioner to be reinstated if it concludes "that the material allegations of the petition are true and that the best interests of the public and the profession, as well as the ends of justice, will be served." *Id.* R. 11.06.[4] This decision is discretionary in nature. *See Eggert*, 606 S.W.3d at 65. In summary, in order to grant a petition for reinstatement, the court (1) "must find that the petitioner has proven true by a preponderance of the evidence the material statements in the petition . . . that petitioner is of good moral character, is fit to practice law, and has led an exemplary life for the preceding five years," and (2) "must find that reinstatement will serve the public's and profession's best interests as well as the ends of justice." *Bd. of Law Exam'rs of State of Tex.*, 953 S.W.2d at 228.

When ruling in favor of the petitioner, the trial court may render a judgment: (1) "authorizing the petitioner to be reinstated upon his or her compliance within eighteen months from the date of the judgment with Rule II of the Rules Governing Admission to the Bar of Texas in effect" at that time, and (2) "direct[ing] the Board of Law Examiners to admit the petitioner to a regularly scheduled bar examination in accordance with that

---

[4] "Material has been defined as 'having real importance or great consequences.'" *Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 472 S.W.3d 325, 335 (Tex. App.—Houston [14th Dist.] 2015, pet. denied) (citing WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY 733 (1984)). Black's Law Dictionary also defines the term as "of such a nature that knowledge of the item would affect a person's decision-making; significant; essential." *See Material*, BLACK'S LAW DICTIONARY (11th ed. 2019).

board's rules and procedures relating to the examination of persons who have not previously been licensed as lawyers in Texas or in any other state." TEX. RULES DISCIPLINARY P. R. 11.06.

The Rules mandate, in contrast, that the court "shall" deny the petition for reinstatement "if it contains any false statement of a material fact or if the petitioner fails to meet the burden of proof." *Id.* at R. 11.03. And, if after hearing the evidence, "the court determines that the petitioner is not eligible for reinstatement, the court may "either enter a judgment denying the petition or direct that the petition be held in abeyance for a reasonable period of time until the petitioner provides additional proof that he or she has satisfied the requirements of these rules." *Id.* R. 11.06. Finally, if the trial court denies a petition for reinstatement after a hearing on the merits, the Rules provide that the petitioner is ineligible to file another petition for reinstatement "until after the expiration of three years from the date of final judgment denying the last preceding petition." *Id.* R. 11.08.

"The court's judgment in a reinstatement proceeding may include such other orders as protecting the public and the petitioner's potential clients may require." *Id.* R. 11.06. Once a judgment has been signed, the petitioner and the Commission each have the right to appeal. *Id.* R. 11.07. A judgment granting reinstatement is stayed pending resolution of the appeal. *Id.*

### V.     ANALYSIS

By one issue, relator contends that the trial court abused its discretion by rendering its interlocutory order allowing Cantu to take the bar examination. Relator asserts that:

> The Texas Rules of Disciplinary Procedure regarding an attorney's petition
> for reinstatement after disbarment expressly provide that if a district court is

12

> satisfied after hearing all the evidence, both in support and in opposition to the petition, that the best interests of the public and the profession, as well as the ends of justice, will be served by reinstatement, that court may render *judgment* authorizing a petitioner's reinstatement upon his compliance with the requirements of Rule II of the Rules Governing Admission to the Bar of Texas (including, in relevant part, sitting for and passing the Texas Bar Examination) within 18 months of the date of said *judgment*. TEX. RULES DISCIPLINARY P. R. 11.06. Moreover, Rule 11.06 expressly provides that such *judgment* shall then direct the Board of Law Examiners to admit the petitioner to a regularly scheduled bar examination as if that person had not been previously licensed.

(Internal citations omitted). Relator thus asserts that the trial court abused its discretion by: (1) issuing an order allowing Cantu to take the Texas Bar Exam in February 2023 without paying any portion of the attorney's fees and expenses ordered to be paid as a condition precedent to any application for reinstatement in the judgment of disbarment; and (2) abating its decision on reinstatement until Cantu's bar exam results are obtained.

In contrast, Cantu asserts that the judgment of disbarment requires him to pay $145,000 prior to reinstatement as a penal sanction. He asserts that he cannot afford to pay this sum, and "requiring an indigent person to pay a fine which he cannot afford violates the United States Constitution." Cantu thus contends that the trial court's order complies with "the Texas Supreme Court's mandate to avoid constitutional issues." Cantu argues that relator must provide him with an alternative method to satisfy the requirement to pay the fine and asserts that he has offered to perform pro bono work to satisfy this requirement. Cantu further argues that he may not pass the bar examination, and in such event, a trial on the merits would be unnecessary.

## A.     Payment of Fees

We begin by briefly addressing Cantu's contentions regarding the requirement that he pay penal sums as a prerequisite to reinstatement. Cantu's judgment of disbarment

expressly states that:

> It is further ORDERED that any attorney fees and costs ordered herein are penal in nature and part of the sanction for misconduct which results from regulation of [Cantu's] law license by the State Bar of Texas and the Supreme Court of Texas, through the Texas Disciplinary Rules of Professional Conduct. Payment of all fees shall be a condition precedent to any application for reinstatement to the practice of law by [Cantu].

The Texas Supreme Court has held that the recovery of attorney's fees "is in derogation of the common law" and is "penal in nature." *New Amsterdam Cas. Co. v. Tex. Indus., Inc.*, 414 S.W.2d 914, 915 (Tex. 1967); *see Musquiz v. Marroquin*, 124 S.W.3d 906, 913 (Tex. App.—Corpus Christi–Edinburg 2004, pet. denied). The Rules provide definitions of relevant terms and state that sanctions may include "ancillary requirements," such as "Payment of Reasonable Attorneys' Fees and all direct expenses associated with the proceedings." TEX. RULES DISCIPLINARY P. R. 1.06(FF). The Rules also define the concept of "reasonable attorneys' fees" under the regulatory scheme. *Id.* R. 1.06(DD). The award of attorney's fees in disbarment proceedings is not unusual. *See, e.g.*, *Flume v. State Bar of Tex.*, 974 S.W.2d 55, 63 (Tex. App.—San Antonio 1998, no pet.) (affirming an award of attorney's fees in a disciplinary action); *Butler v. Comm'n for Law. Discipline*, 928 S.W.2d 659, 666 (Tex. App.—Corpus Christi–Edinburg 1996, no writ) (same). In fact, in Cantu's direct appeal of his judgment of disbarment, Cantu attacked the trial court's award of attorney's fees in three separate issues. *See Cantu*, 2020 WL 7064806, at *39–43. However, Cantu did not assail the judgment of disbarment on grounds that the recovery of attorney's fees was penal in nature. *See id.* Thus, his contention in the underlying proceedings appears to consist of an impermissible collateral attack on the judgment of disbarment. *See Browning v. Prostok*, 165 S.W.3d 336, 345–46 (Tex. 2005); *Davis v. West*, 317 S.W.3d 301, 309 (Tex. App.—Houston [1st Dist.] 2009, no pet.). In

14

any event, the nature of the fees, and Cantu's contentions regarding their propriety, need not be further addressed in this original proceeding given our analysis of the trial court's October 6, 2022 order in the context of the Rules.

**B.      Reinstatement**

Relator asserts that the trial court's order does not constitute a valid exercise of that court's authority because it is directly contrary to the procedures set forth in the Rules. Under the Rules, Cantu was required to file a petition for reinstatement asserting, among other matters, that he "has paid all costs and fines assessed in connection with the Disciplinary Proceeding or Disciplinary Action that resulted in his or her disbarment or resignation." TEX. RULES DISCIPLINARY P. R. 11.02(D). Instead, Cantu's original petition for reinstatement states that, "[a]ll cost[s] and fines assessed against Cantu in connection with the [d]isciplinary proceedings have not been paid," and Cantu "hereby asks the Court to waive the approximately $145,000.00 dollars in fines and fees assessed against [him]."

Cantu's petition thus fails to contain one of the express requirements established by the Rules for a petition for reinstatement. *See id.* Rather than denying the petition on this basis, offering Cantu an opportunity to amend his petition, or convening an evidentiary hearing, the trial court instead issued an order allowing Cantu to sit for the bar examination and abated the "other issues" required for reinstatement pending receipt of Cantu's bar results. The Rules do not contemplate such a procedure. *See generally id.* R. 11.01–.08. Rather, the Rules provide that a petitioner may take the bar exam if the court grants a judgment allowing reinstatement. *See id.* R. 11.06. Specifically, under the Rules, if the court has heard "all the evidence, both in support and in opposition to the petition," and concludes that "the material allegations of the petition are true and that the

15

best interests of the public and the profession, as well as the ends of justice, will be served" by reinstatement, "the court may render judgment authorizing the petitioner to be reinstated upon his or her compliance within eighteen months from the date of judgment with Rule II of the Rules Governing Admission to the Bar of Texas," including the requirement to sit for and pass the bar examination. *Id.*; *see* TEX. RULES GOVERN. BAR ADM'N 2. In such a case, the court's judgment "shall direct the Board of Law Examiners to admit the petitioner to a regularly scheduled bar examination." TEX. RULES DISCIPLINARY P. R. 11.06. Given that the trial court did not follow the procedures as specifically set forth in the Rules, we examine whether the trial court possesses the authority to issue the challenged order.

The Texas Supreme Court has the "exclusive authority" to regulate the practice of law in the State of Texas. *The State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 246 (Tex. 1994); *see In re El Paso Healthcare Sys., Ltd.*, 225 S.W.3d 146, 155 (Tex. App.—El Paso 2005, pet. dism'd). This power derives from the Texas Constitution and the State Bar Act. *See In re State Bar of Tex.*, 113 S.W.3d 730, 732 (Tex. 2003) (orig. proceeding); *see generally* TEX. CONST. art. II, § 1 (regarding the separation of powers); TEX. GOV'T CODE ANN. §§ 81.001–.156 (the State Bar Act). The Legislature has also provided that "[o]nly the supreme court may issue licenses to practice law in this state" and this "power may not be delegated." TEX. GOV'T CODE ANN. § 82.021. "Because the admission and practice of Texas attorneys is inextricably intertwined with the administration of justice, the Court must have the power to regulate these activities in order to fulfill its constitutional role." *Gomez*, 891 S.W.2d at 245. The State Bar Act thus gives the supreme court "administrative control over the State Bar and provides a statutory mechanism for

16

promulgating regulations governing the practice of law." *In re State Bar of Tex.*, 113 S.W.3d at 732 (quoting *Gomez*, 891 S.W.2d at 245); *see* TEX. GOV'T CODE ANN. § 81.011 (stating that the supreme court "shall exercise administrative control over the state bar"). Based on these statutory and inherent constitutional powers, the supreme court has promulgated a regulatory scheme which includes the Rules at issue in this original proceeding. *See In re State Bar of Tex.*, 113 S.W.3d at 732; *Goldberg v. Comm'n for Law. Discipline*, 265 S.W.3d 568, 575 (Tex. App.—Houston [1st Dist.] 2008, pet. denied). "No subordinate court in Texas has the power to usurp [the supreme court's] authority or responsibility in this area." *Gomez*, 891 S.W.2d at 246; *see Goldberg*, 265 S.W.3d at 576; *In re El Paso Healthcare Sys., Ltd.*, 225 S.W.3d at 155.

We conclude that the trial court's order impinged on the supreme court's exclusive authority to regulate the practice of law. *See Gomez*, 891 S.W.2d at 246; *Goldberg*, 265 S.W.3d at 576; *In re El Paso Healthcare Sys., Ltd.*, 225 S.W.3d at 155. In short, the trial court's order is not authorized by the Rules. *See Bd. of Disciplinary Apps. v. McFall*, 888 S.W.2d 471, 472 (Tex. 1994) (orig. proceeding) (per curiam) (stating that the Rules "do not . . . provide for interim equitable relief"). Because the trial court exceeded its authority, we conclude that the trial court abused its discretion in issuing the subject order.

## C. Remedy by Appeal

Relator contends that it lacks an adequate remedy by appeal in this case because no rule or statute provides for an appeal from an interlocutory order such as the one at issue here. Relator further contends that the order thwarts the requirement that a petitioner for reinstatement must satisfy the prerequisites of the Rules before obtaining a judgment that includes a directive to the Board of Law Examiners allowing admittance to

a bar examination. According to relator, a remedy by appeal from a final judgment would be inadequate to remedy this problem.

In contrast, Cantu characterizes the order at issue as "incidental to the normal litigation process" and asserts that issuing mandamus relief in this case will cause the "flood" of petitions for writ of mandamus to turn into a "tidal wave" of original proceedings, and that granting relief in this case will cause "every well[-]heeled litigant [to] seek review by this Court of every decision made by a trial court." Cantu also contends that relator has not explained what damage it would suffer as a result of trial court's ruling and that "the expense of grading one more [bar] examination" does not warrant mandamus review.

The Rules allow for an appeal from a final judgment in a judicial proceeding for reinstatement but do not provide for interlocutory appeals of interim rulings in such proceedings. *See* TEX. RULES DISCIPLINARY P. R. 11.07. However, we must still determine whether an appeal following a final judgment in the reinstatement proceeding would serve as an adequate remedy for the situation presented here. The adequacy of an appellate remedy depends on the circumstances and requires a balancing of the benefits of mandamus review against the detriments. *See In re Acad., Ltd.*, 625 S.W.3d 19, 32 (Tex. 2021) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 135. Mandamus review of "incidental, interlocutory rulings" by a trial court "unduly interferes with trial court proceedings, distracts appellate court attention to issues that are unimportant both to the ultimate disposition of the case at hand and to the uniform development of the law, and adds unproductively to the expense and delay of civil litigation." *In re Acad., Ltd.*, 625 S.W.3d at 32 (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136); *see In re State Farm Mut. Auto. Ins.*, 629 S.W.3d 866, 872 (Tex. 2021) (orig. proceeding). However:

> Mandamus review of significant rulings in exceptional cases may be essential to preserve important substantive and procedural rights from impairment or loss, allow the appellate courts to give needed and helpful direction to the law that would otherwise prove elusive in appeals from final judgments, and spare private parties and the public the time and money utterly wasted enduring eventual reversal of improperly conducted proceedings.

*In re Acad., Ltd.*, 625 S.W.3d at 32 (quoting *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136).

As relevant to this case, the Texas Supreme Court has "consistently granted mandamus relief when a lower court interferes with the disciplinary process." *In re State Bar of Tex.*, 113 S.W.3d at 734–35 (considering that the Rules were "dispositive" regarding jurisdiction, the State Bar lacked an adequate remedy at law to correct a trial court's order interfering with its jurisdiction), *In re State Bar of Tex.*, 960 S.W.2d 651, 651 (Tex. 1997) (orig. proceeding) (per curiam) (concluding that "[a] trial court has no jurisdiction to enjoin attorney disciplinary proceedings"); *State Bar of Tex. v. Jefferson*, 942 S.W.2d 575, 576 (Tex. 1997) (orig. proceeding) (per curiam) (ordering the trial court to vacate a temporary restraining order staying grievance proceedings, but allowing the court to consider constitutional issues that did "not interfere with a specific grievance proceeding"); *McFall*, 888 S.W.2d at 472 (granting mandamus relief regarding a temporary restraining order prohibiting the suspension of an attorney because the Rules "do not . . . provide for interim equitable relief" and the case affected the state's interests and disturbed the processes of government); *State v. Sewell*, 487 S.W.2d 716, 717–18 (Tex. 1972) (orig. proceeding) (stating that "this court has looked with disfavor upon injunctive encroachments upon delegated administrative and executive powers which affect the state as a whole" and granting relief regarding an injunction which interfered

with the grievance procedures authorized by the State Bar Act.). Following the supreme court, we conclude likewise. The trial court's order interferes with the requirements and procedures for reinstatement as delineated in the Rules, and thus encroaches on the supreme court's authority and jurisdiction to regulate the practice of law in this state.

## D. Summary

We conclude that the trial court abused its discretion by issuing an order that was not authorized by the Rules. We further conclude that relator lacks an adequate remedy by appeal to address this abuse of discretion. Accordingly, we sustain relator's sole issue presented in this original proceeding.

## VI. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, and the applicable law, is of the opinion that relator has met its burden to obtain mandamus relief. Accordingly, we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We conditionally grant the petition for writ of mandamus and direct the trial court to vacate its order of October 6, 2022, and its December 8, 2022 associated order regarding reconsideration. Our writ will issue only if the trial court fails to promptly comply.

GINA M. BENAVIDES
Justice

Delivered and filed on the
15th day of March, 2023.

20