**Opinion issued May 28, 2026.**



In the

# Court of Appeals

for the

# First District of Texas

———————————

## NO. 01-24-00298-CV

———————————

**LIBERATION HOLDINGS, LLC D/B/A SOUNDCHECK MUSIC COMPLEX AND GULF WAREHOUSE ASSOCIATES, LTD, Appellants**

**v.**

**ALL-TEX ROOFING LLC, Appellee**

---

**On Appeal from the 215th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-75134**

---

## MEMORANDUM OPINION

Appellants Liberation Holdings, LLC d/b/a Soundcheck Music Complex (Soundcheck), a plaintiff in the trial court, and Gulf Warehouse Associates, Ltd. (GWA), a defendant, cross-plaintiff, and cross-defendant in the trial court, appeal

from summary judgment rulings in favor of appellee All-Tex Roofing LLC (All-Tex), a defendant, cross-plaintiff, and cross-defendant in the trial court. The parties' dispute arises from allegations that, while replacing the roof on a warehouse structure owned by GWA and used by tenant Soundcheck, All-Tex permitted water to enter the warehouse, damaging both GWA's and Soundcheck's property. Soundcheck and GWA claimed further that All-Tex did not timely complete promised repairs to the roof. The trial court granted summary judgment in favor of All-Tex on all of Soundcheck's and GWA's claims against All-Tex and all of All-Tex's claims against GWA.

We affirm the trial court's judgment. Tenant Soundcheck had entered into a settlement with All-Tex's insurer prior to the summary-judgment proceedings, carving out any "loss of income" claims, and Soundcheck's remaining claims were those it argued were outside the scope of the settlement. We find the trial court properly concluded that Soundcheck's lost-profits and business-destruction claims against All-Tex failed as a matter of law and that Soundcheck presented no evidence of damages allegedly resulting from All-Tex's failure to repair the roof on a timely basis that are not within the scope of damages that Soundcheck released as part of a settlement with All-Tex's insurer.

With respect to owner GWA's claims against All-Tex, because GWA elected to treat its contract with All-Tex as continuing after All-Tex's alleged

2

breach and insisted on All-Tex's continued performance before ultimately refusing to pay All-Tex for its work, the trial court properly rejected GWA's prior-breach defense to All-Tex's breach-of-contract claim against GWA and GWA's breach-of-contract claim against All-Tex. The trial court also properly granted summary judgment to All-Tex on GWA's breach-of-warranty claim because GWA presented no evidence that All-Tex did not make repairs to the roof within a reasonable time. Finally, we affirm the summary judgment on GWA's negligence claims because GWA did not challenge All-Tex's argument that such claims are barred by the economic-loss rule.

## Background

In April 2013, Soundcheck began renting from GWA warehouse space located on the Gulf Freeway in Houston. Soundcheck is owned by Brandon Stanley (Brandon) and Carrie Stanley (Carrie). Soundcheck rented soundproofed rooms to monthly tenants for music rehearsals, music recording, and instrument storage.

### A. The Roofing Contract

In November 2018, GWA hired All-Tex, a roofing contractor, to replace the roof of the building that included Soundcheck's facility. GWA and All-Tex entered into a written contract under which GWA promised to pay All-Tex $130,506 for

3

the work. The contract did not include a deadline by which All-Tex was required to complete its work. The work was supervised by Joel Duran, an All-Tex manager.

## B.    The Water Intrusion

On the night of November 21, 2018, when All-Tex's roofing work was underway but incomplete, rainwater entered Soundcheck's space during a storm. The next morning, Brandon exchanged text messages with Duran regarding the water intrusion. In that exchange, Brandon told Duran that "extensive" damage had occurred. Brandon asked Duran: "How was roof secured?" Brandon later followed up with the question: "Again, how was roof closed up?" Duran responded: "Our tie-in from the new roof to the old roof failed so we had to re-do the whole area again."

According to Soundcheck, the water intrusion damaged multiple Soundcheck practice rooms and common areas, as well as its office. Soundcheck claims that some of the damaged practice rooms were rendered unusable and that the soundproofing insulation throughout its facility was compromised even in areas without visible water. Soundcheck alleges further that new roof leaks in different parts of the facility continued to be discovered "over and over" through at least July 2020. Soundcheck claims that All-Tex's "malfeasance destroyed Soundcheck's business," including by driving away customers, forcing

4

Soundcheck to sell a related facility elsewhere in Houston, and undermining plans to expand the business to other cities.

**C.      Insurance Settlement and Release**

On June 14, 2019, Brandon entered into a Release and Settlement of Property Damages Claims with All-Tex's insurer (the Insurance Settlement and Release) pursuant to which, in exchange for a payment of $128,253.50, Brandon agreed on Soundcheck's behalf to release All-Tex from:

> any and all claims and demands, actions and causes of action, damages (not including loss of income) both known and unknown, including future developments thereof, expense and compensation on account of, or in any way growing out of, any and all known and unknown property damage resulting or to result from that certain accident on or about November 21, 2018 at or near 5001 Gulf Freeway, Houston, TX.

The release stated further:

> Brandon Stanley **agrees that this settlement is a full compromise.** Brandon Stanley **further agrees that the nature, extent and results of the damages sustained are not now all known or anticipated, but** Brandon Stanley **nevertheless desires to settle and compromise said claim in full.**
>
> **I/We further agree that this release and payment pursuant thereto is not to be construed as a waiver or an estoppel of any party released to prosecute any claim or action which such party may have against the undersigned or others. This release does not release the claim for loss of income claimed by Brandon Stanley.**

(Emphasis in original.)

**D.    The Parties' Litigation Claims**

On November 20, 2020, Soundcheck and the Stanleys filed suit against All-Tex and GWA. Soundcheck's claims against All-Tex included claims for negligence, gross negligence, res ipsa loquitur, violation of the Texas Deceptive Trade Practices Act (DTPA), breach of express and implied warranty, and negligent misrepresentation.

On June 16, 2021, GWA filed cross-claims against All-Tex for breach of contract, breach of warranty, negligence, and contribution. On February 28, 2022, All-Tex filed a suit on sworn account against GWA and cross-claims for breach of contract and quantum meruit. On January 5, 2024, All-Tex amended its cross-claims to include claims for unjust enrichment and unclean hands.

**E.    Soundcheck/GWA Settlement**

On November 14, 2022, the trial court granted a partial summary judgment against GWA on its defense of waiver and release. The trial court ruled that the Insurance Settlement and Release between Brandon and All-Tex's insurer did not release any claims against GWA. Soundcheck later settled its claims against GWA, which were dismissed with prejudice. GWA remained in the litigation due to the cross-claims between GWA and All-Tex.

**F.      All-Tex's Motions for Summary Judgment**

**1.      Plaintiffs**

On December 1, 2023, All-Tex filed traditional and no-evidence motions for summary judgment regarding the plaintiffs' claims against it. All-Tex amended those motions on March 6, 2024. In its traditional motion for summary judgment, as amended, All-Tex argued that the evidence conclusively established All-Tex's affirmative defense of release and negated the plaintiffs' claims for "mental anguish," "loss of business income," "lost profits," "business destruction," and other economic damages. In its no-evidence motion for summary judgment, as amended, All-Tex argued that no evidence supported the essential elements of plaintiffs' claims for negligence, DTPA violations, breach of implied and express warranty, and negligent misrepresentation.

**2.      GWA**

On December 15, 2023, All-Tex filed traditional and no-evidence motions for summary judgment regarding GWA's claims against it. All-Tex sought a traditional partial summary judgment against GWA on All-Tex's suit on sworn account and its breach-of-contract cross-claim. All-Tex also sought a traditional partial summary judgment against GWA on GWA's cross-claims for breach of contract, breach of implied warranty, and negligence. In its no-evidence motion for summary judgment, All-Tex argued that no evidence supported most of the

essential elements of GWA's cross-claim for breach of contract, two of the essential elements of GWA's cross-claim for breach of warranty, and all of the essential elements of GWA's negligence cross-claim.

### 3. Hearing

At a hearing on March 28, 2024, the trial court heard motions including All-Tex's amended traditional and no-evidence motions for summary judgment regarding the plaintiffs and GWA's claims against it.

## G. Trial Court Judgment

On April 3, 2024, the trial court granted All-Tex's traditional and no-evidence summary-judgment motions dismissing all of Soundcheck and the Stanleys' claims against All-Tex. The trial court also granted All-Tex's traditional and no-evidence summary-judgment motions dismissing all of GWA's cross-claims against All-Tex and awarded All-Tex $130,506.00 in damages against GWA on All-Tex's cross-claims. On May 6, 2024, the trial court entered an appealable final judgment that incorporated by reference its April 3, 2024 rulings.

## H. Soundcheck's Appeal

Soundcheck raises the following points of error on appeal:

1. Did the trial court err in granting All-Tex's traditional motion for summary judgment based on its apparent finding that Soundcheck's claims were released, even though Soundcheck's release (1) excludes claims for lost income and is limited to claims arising from a November 21, 2018 accident and (2) does not include claims arising from All-Tex's later failures to repair the roof and misrepresentations that the roof was fixed?

2. Did the trial court err in granting All-Tex's traditional motion for summary judgment based on its apparent finding that All-Tex "conclusively negated" all damages, even though Soundcheck provided proof of lost profits and business destruction damages?

3. Did the trial court err in granting All-Tex's no-evidence motion for summary judgment dismissing Soundcheck's negligence, DTPA, breach of warranty, and misrepresentation claims even though All-Tex owed a duty to Soundcheck under Texas law and Soundcheck provided more than a scintilla of evidence that All-Tex breached its duty, causing Soundcheck damages— especially given All-Tex admitted that it should have "tied in" the roof during repairs, that its tie-in failed, and that water intruded through the roof?

## I.     GWA's Appeal

GWA raises the following points of error on appeal:

1. Did the trial court err in granting All-Tex's traditional motion for summary judgment on All-Tex's claim for contract damages against GWA despite evidence that All-Tex breached the contract by leaving the roof of GWA's building open and allowing rain to pour in, and then failing to repair the roof for more than a year, causing damage to GWA's building?

2. Did the trial court err in granting All-Tex's traditional and no-evidence motions for summary judgment dismissing GWA's contract, breach of warranty, and negligence claims against All-Tex even though All-Tex admitted that it should have "tied in" the roof during repairs, and that its tie-in failed, causing water to pour into GWA's building and GWA to incur damages?

3. Did the trial court err in granting All-Tex's traditional and no-evidence motions for summary judgment against Soundcheck even though Soundcheck provided more than a scintilla of evidence that All-Tex admitted it should have "tied in" the roof during repairs, and that its tie-in failed, causing water to pour into Soundcheck's facility, causing Soundcheck damages?

9

## Standard of Review

We review de novo the trial court's ruling on a summary-judgment motion. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009) (citing *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003)).

After an adequate time for discovery, a party may move for no-evidence summary judgment on the ground that no evidence exists of one or more essential elements of a claim on which the adverse party bears the burden of proof at trial. TEX. R. CIV. P. 166a(i); *Flameout Design & Fabrication, Inc. v. Pennzoil Caspian Corp.*, 994 S.W.2d 830, 834 (Tex. App.—Houston [1st Dist.] 1999, no pet.). The burden then shifts to the nonmovant to produce evidence raising a genuine issue of material fact on the elements specified in the motion. TEX. R. CIV. P. 166a(i); *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006). The trial court must grant the motion unless the nonmovant presents more than a scintilla of evidence raising a fact issue on the challenged elements. *Flameout Design & Fabrication*, 994 S.W.2d at 834; *see also Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 755 (Tex. 2007) (per curiam) ("An appellate court reviewing a summary judgment must consider whether reasonable and fair-minded jurors could differ in their conclusions in light of all of the evidence presented."). "More than a scintilla of evidence exists when the evidence 'rises to a level that would enable reasonable

and fair-minded people to differ in their conclusions.'" *King Ranch v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003) (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

Generally, when a party moves for both traditional and no evidence summary judgment, we first review the trial court's ruling under the no-evidence standard of review. *Lightning Oil Co. v. Anadarko E&P Onshore, LLC*, 520 S.W.3d 39, 45 (Tex. 2017) (noting that, "[i]f the non-movant fails to overcome its no-evidence burden on any claim, we need not address the traditional motion to the extent it addresses the same claim"). However, if the movant in a traditional motion challenges a cause of action on an independent ground, we consider that ground first because, if the cause of action is barred as a matter of law, it is unnecessary to address the no-evidence challenge. *Hammond v. Hanser*, No. 01-22-00707-CV, 2024 WL 4628675, at *6 (Tex. App.—Houston [1st Dist.] Oct. 31, 2024, pet. denied) (mem. op.).

To prevail on a traditional summary-judgment motion, the movant must establish that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Little v. Tex. Dep't of Crim. Just.*, 148 S.W.3d 374, 381 (Tex. 2004). When, as here, the trial court's summary judgment does not state the basis for the court's decision, we must uphold the judgment if any of the theories advanced in the motion is meritorious. *Knott*, 128

S.W.3d at 216. If the nonmovant opposes a motion for summary judgment by invoking an affirmative defense, the nonmovant must come forward with summary-judgment evidence sufficient to raise an issue of fact on each element of the defense to avoid summary judgment. *Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 947 (Tex. 1998); *Brownlee v. Brownlee*, 665 S.W.2d 111, 112 (Tex. 1984).

We review the evidence supporting a summary judgment in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Zive v. Sandberg*, 644 S.W.3d 169, 173 (Tex. 2022). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

**Soundcheck's Claims**

Soundcheck argues on appeal that the trial court erred in granting All-Tex's motions for summary judgment as to claims that Soundcheck contends fall within the "loss of income" claims carve-out in the Insurance Settlement and Release.[1]

---

[1] As noted above, in the Insurance Settlement and Release, in exchange for a payment of $128,253.50, Soundcheck's CEO agreed on behalf of Soundcheck and others to release All-Tex from:

> any and all claims and demands, actions and causes of action, damages (***not including loss of income***) both known and unknown, including future developments thereof, expense and compensation on account of, or in any way growing out of, any and all known and

12

Specifically, Soundcheck claims that the trial court erred in granting All-Tex's motions as to Soundcheck's claims for lost income, including its "business destruction" claim, and for post-storm damages that Soundcheck contends are not property damage resulting from the November 21, 2018 accident. All-Tex argues that Soundcheck has no evidence of lost profits resulting from the accident or post-storm damages that did not result from the accident.

## A. Lost Profits

### 1. The parties' positions

In its November 2020 petition, Soundcheck claimed that All-Tex had effectively destroyed Soundcheck's revenue stream. Soundcheck projected that, as a result, it was likely to lose $480,000 in net profits in the three years following the November 2018 storm. As of April 2023, Soundcheck estimated its lost profits in 2019 through 2021 at $390,642. Soundcheck based that estimate on profit and loss statements for periods before and after the storm. Soundcheck stated that it had made a profit of $108,788 in 2016, $120,158 in 2017, and $94,267 in 2018. Soundcheck's 2019-2021 lost-profits estimate disregarded the 2018 number as tainted by the effects of Hurricane Harvey in August 2017, a May 2018 power surge, and the November 2018 storm. Soundcheck reasoned that, for the period of

---

unknown property damage *resulting or to result from that certain accident on or about November 21, 2018* at or near 5001 Gulf Freeway, Houston, TX.

(Emphasis added.)

13

2019 through 2021, "had Defendants not destroyed its revenue stream, a conservative estimate of Soundcheck's expected profits for the relevant three-year period would have been 5% annual growth from the 2017 figures - $126,060 for 2019, $132,363 for 2020, and $138,982 for 2021," totaling $397,405. Soundcheck reached its 2019-2021 lost-profits estimate of $390,642 by subtracting from $397,405 Soundcheck's stated actual profits for 2019 through 2021 of $6,763.

In its summary-judgment motions, All-Tex argued that Soundcheck had no evidence of any lost profits and that Soundcheck's own financial records negated any such claim. All-Tex noted that, while Soundcheck had premised its 2019-2021 lost-profits estimate of $390,642 on alleged profits of $108,788 in 2016 and $120,158 in 2017, Soundcheck's tax returns showed a loss of $76,420 in 2016 and $19,343 in 2017. All-Tex's forensic accounting expert stated that the operating expenses used in the 2016 and 2017 profit and loss statements on which Soundcheck based its 2019-2021 lost-profits estimate were inconsistent with those reported in Soundcheck's tax filings.

All-Tex also cited to deposition testimony from Soundcheck's owners, Brandon and Carrie Stanley, regarding Soundcheck's 2019-2021 lost-profits estimate. All-Tex argued that the testimony showed that Soundcheck's lost-profits estimate was based on financial statements prepared by Carrie, who has an economics degree but is not an accountant, that artificially inflated revenue prior to

the November 2018 storm and expenses after the storm. All-Tex claimed that the Stanleys were unable to provide objective data to back up claims that Soundcheck lost income based on its inability to rent out water-damaged band rooms and to collect rent from tenants whose space had been damaged. All-Tex argued that Carrie was unable to explain how various inputs into Soundcheck's profit and loss statements had been handled, such as why "rent" had been included as an ongoing expense during periods when Soundcheck's rent had been abated, how benefits received by Brandon such as an airline pass had been accounted for, why in preparing financial statements she had allocated certain expenses to some Soundcheck properties and not others, and why Soundcheck had deducted interest expenses on Brandon's credit cards for 2018. All-Tex claimed further that the Stanleys' testimony showed that Soundcheck's 2019-2021 lost-profits estimate did not give adequate weight to the impacts that economic factors such as Hurricane Harvey and COVID-19 had on Soundcheck's business, or account for a small business loan that Soundcheck received in connection with the pandemic.

In its response to All-Tex's motions, Soundcheck argued that All-Tex had not met the legal standard necessary to establish that All-Tex was entitled to summary judgment on Soundcheck's lost-profits claim. Soundcheck summarized at a high level Carrie's methodology in calculating Soundcheck's 2019-2021

lost-profits estimate and argued that a jury should weigh All-Tex's attacks on that estimate.

## 2. Analysis

Under Texas law, recovery for lost profits does not require that the loss be susceptible of exact calculation. *Horizon Health Corp. v. Acadia Healthcare Co.*, 520 S.W.3d 848, 859 (Tex. 2017). Instead, "the general rule is that recovery of lost profits as damages is allowed where it is shown that a loss of profits is the natural and probable consequence of the act or omission complained of, and their amount is shown with sufficient certainty." *Id.* at 860 (quoting *Tex. Instruments, Inc. v. Teletron Energy Mgmt., Inc.*, 877 S.W.2d 276, 279 (Tex. 1994)).

The injured party must prove both the fact and amount of lost profits with reasonable certainty. *Id.* A party's mere assertion that a contract was lost does not establish lost profits with reasonable certainty. *Id.* (citing *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80, 85 (Tex. 1992)). Nor does evidence that is largely speculative. *Id.* (citing *Tex. Instruments*, 877 S.W.2d at 279). "[A]nticipated profits cannot be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations, or the chances of business, or where there is no evidence from which they may be intelligently estimated." *Id.* (quoting *Tex. Instruments*, 877 S.W.2d at 279). While the determination of what constitutes "reasonably certain" evidence of lost profits is a fact-intensive determination, a

16

lost-profits estimate must at a minimum be based on objective facts, figures, or data from which the amount of lost profits can be ascertained. *Id.* (citing *ERI Consulting Eng'rs, Inc. v. Swinnea*, 318 S.W.3d 867, 876 (Tex. 2010); *Heine*, 835 S.W.2d at 85)). For example, a business can prove lost profits in a reasonably certain amount by establishing (1) lost revenue through comparative evidence of revenue from a recent time period and (2) its profit margin on that revenue. *Swinnea*, 318 S.W.3d at 877.

As Soundcheck's co-founder and co-owner, Carrie is competent to testify as to Soundcheck's historic profit margin. *See id.* at 876 (holding that business's "long-time co-owner and then sole owner" was competent to testify as to estimated profit margin based on information provided by in-house accountant). The fact that Carrie premised that testimony on profit-and-loss statements showing profits in years in which Soundcheck had claimed losses in its tax returns does not, on its own, defeat Soundcheck's lost-profits claim as a matter of law. *See White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983) (reversing instructed verdict that rejected lost-profits claim, reasoning in part that, even though claimant's accountant's lost-profits projection conflicted with claimant's tax returns and other evidence, expert's projection was some evidence to be considered by jury).

However, the Stanleys' testimony in support of Soundcheck's 2019-2021 lost-profits estimate reveals that the estimate was premised on a series of

unsupported assumptions. For example, Carrie Stanley testified that she had never spoken to any tenant who moved out of the warehouse after the November 2018 storm about the tenant's reason for leaving and, since 2015, had not talked to any tenant about why the tenant was leaving or had any firsthand contact with a tenant about any complaint with regard to the space. She largely could not recall which rooms had been occupied at the time of the storm and, for two of the few rooms she recalled being occupied, she did not recall whether those tenants had left or been moved to a different room. When asked if anyone had "identified any data that shows that there was a ready and willing tenant who was not able to move into one of your spaces at the Gulf Freeway location because there were not enough rooms available at any point in time since November of 2018," she could not identify anyone. She stated that she believed "more than likely that there were definitely people that wanted to move in that we couldn't," but that it was a question for Brandon Stanley.

Brandon Stanley testified that he did not think that Soundcheck had been forced to turn away any potential tenant after the November 2018 storm due to availability. He testified that there were tenants who had to be moved from one space to another after the November 2018 storm, but did not recall how many times that occurred. He testified that there were tenants who had moved out of the warehouse by the end of November 2018, or by the end of December 2018, but he

18

could not identify them. He testified that at least those who left by the end of November 2018 would have left due to water damage from the storm but also that, most of the time, tenants who left did not give a reason. When asked what documents would show, for each room identified as having water damage from the November 2018 storm, if Soundcheck "had to turn away somebody or . . . lost a tenant who was in one of these rooms," Brandon testified again that "[m]ostly, there was never a reason provided why people left; they just left"; and that any documentation would require him to "guide someone through it." When pressed on what evidence Soundcheck would rely on at trial "in terms of proof of how you lost tenants due to water in the building," he answered: "The sound quality was lower. The common areas were completely destroyed and my brand reputation was completely annihilated along with my own. That's how."

Soundcheck was unable to identify which of its losses in the 2019 to 2021 period—a time period including the worst of the COVID-19 pandemic—were attributable to water damage caused by All-Tex. Soundcheck's owners were unable to identify which, if any, existing customer contracts they lost due to water damage or which, if any, potential customer contracts they lost due to water damage. As a result, they were unable to identify how much profit they lost as a result of the water damage. The evidentiary record is thus comparable to that in *Heine*, in which the Texas Supreme Court held that legally insufficient evidence supported a

19

lost-profits claim related to the unavailability of a bulldozer belonging to the plaintiff. 835 S.W.2d at 85. The supreme court held in *Heine* that the plaintiff was unable to support its assertion that the losses on which it based its lost-profits claim were attributable to the bulldozer's unavailability, noting that the business owner was "not able to specify which contracts they lost, how many they lost, how much profit they would have had from the contracts, or who would have awarded them contracts." *Id.* The supreme court concluded that the "bare assertion that contracts were lost does not demonstrate a reasonably certain objective determination of lost profits." *Id.*

Soundcheck did not produce summary-judgment evidence that its 2019-2021 lost-profits estimate was based on objective facts, figures, or data from which the amount of lost profits that were the "natural and probable consequence" of All-Tex's conduct could be ascertained. *See Horizon Health*, 520 S.W.3d at 859-60 (noting that, generally, recovery of lost profits is allowed where it is shown that loss of profits is natural and probable consequence of complained-of act or omission *and* amount is shown with sufficient certainty). The trial court properly concluded that Soundcheck's lost-profits claim, including any "business-destruction" claim,[2] failed as a matter of law. *See Chehab v. First Serv.*

---

[2] In the trial court, Soundcheck identified its "business-destruction" claim as a claim for damages "flow[ing] from the lost income Soundcheck suffered as a result of

20

*Credit Union*, No. 14-18-00969-CV, 2020 WL 5241060, at *6 (Tex. App.—Houston [14th Dist.] Sept. 3, 2020, no pet.) (mem. op.) (affirming summary judgment against plaintiff on lost-profits claim because plaintiff did not produce summary-judgment evidence that its loss of profits was natural and probable consequence of defendant's alleged conduct); *Davidson v. Tel W. Network Servs. Corp.*, No. 14-13-00089-CV, 2014 WL 1713899, at *4 (Tex. App.—Houston [14th Dist.] Apr. 29, 2014, no pet.) (mem. op.) (affirming summary judgment against plaintiff on lost-profits claim where plaintiff stated in affidavit that business had "lost a substantial amount of business and profits" because plaintiff failed to provide "facts, figures, or data to support its assertion that it suffered lost business and resulting lost profits" due to defendant's alleged negligence); *cf. Mid Continent Lift & Equip., LLC v. J. McNeill Pilot Car Serv.*, 537 S.W.3d 660, 669 (Tex. App.—Austin 2017, no pet.) (reversing jury award of lost profits and rendering take-nothing judgment where "chain of inferences required to support any award of lost profits . . . require[d] speculation at multiple levels").

## B.     Post-Storm Damages

Soundcheck also argues on appeal that the trial court erred in granting All-Tex's motions for summary judgment as to claims that Soundcheck contends fall outside the scope of the Insurance Settlement and Release because they are

---

All-Tex's failure to properly fix the roof" and thus "explicitly carved out of the release."

based on damages that are not property damage resulting from the November 21, 2018 accident. In its response to All-Tex's summary-judgment motions, Soundcheck argued that the release did not include "claims arising from water intrusions that occurred after November 21, 2018 or claims arising from All-Tex's subsequent failures to repair the roof and . . . misrepresentations regarding the status of the repairs." Soundcheck cited to an affidavit in which Brandon Stanley stated that:

- All-Tex "repeatedly told GWA and [Brandon] that the leaks had been fixed";

- Soundcheck reasonably relied on those representations;

- contrary to All-Tex's assurances, "additional leaks occurred and new leaks in different parts of the facility were discovered over and over," including in May 2019, October 2019, May 2020, and July 2020;

- Brandon reported the new leaks to GWA;

- the Stanleys took moisture readings showing that moisture persisted through 2020;

- reports prepared by a GWA consultant show that the warehouse roof was not completely fixed until July 30, 2020, at the earliest;

- tenants continued to complain to Brandon about water damage in 2019 and 2020, including in rooms that had not been damaged in November 2018;

- most of the new interior lights that GWA installed in July 2020 were no longer working by December 2020, presumably due to water damage;

- all of Soundcheck's attempted repairs addressing damage from the November 2018 storm were destroyed by ongoing leaks; and

22

- Soundcheck lost goodwill and its reputation due to the ongoing water damage.

Brandon argued that the Insurance Settlement and Release "does not cover any damages arising from All-Tex's failure to fix the roof after [November 21, 2018] or damages arising from its misrepresentations after that date that the roof had been fixed."

All-Tex responded that nothing in Brandon's affidavit or its attached exhibits evidences a claim outside the scope of the release. All-Tex argued that affidavit exhibits D, E, and F are "a combined 200+ pages of various text messages and emails" that "do not show subsequent leaks outside the scope of the release," that exhibits H, I, and J are hearsay expert reports, and that exhibit G is "a Stanley-created spreadsheet showing 'moisture readings' entirely devoid of context."

Soundcheck alleges that, as a result of All-Tex's alleged negligence on November 21, 2018, water entered the warehouse in multiple locations. Soundcheck alleges that, over the next 18 months, water continued to enter the warehouse in some of those same locations and in new locations. Soundcheck does not allege any fraud in the procurement of the release. Soundcheck does not allege any misconduct by All-Tex after November 21, 2018, other than promising to fix the roof and failing to do so on a timely basis. *Cf. Wolf Hollow I, L.P. v. El Paso Mktg., L.P.*, 409 S.W.3d 879, 890 (Tex. App.—Houston [14th Dist.] 2013)

(holding that 2005 release of claims related to alleged failure to deliver gas meeting contractual quality requirements as referenced in correspondence about deliveries made in 2004 did not encompass similar claims related to gas deliveries in 2006), *rev'd on other grounds*, 450 S.W.3d 121 (Tex. 2014). Soundcheck alleges that the roof was not fully repaired until the end of July 2020, at the earliest. Soundcheck does not direct us to any evidence that any water intrusion after November 21, 2018, resulted from any post-storm conduct by All-Tex other than allegedly failing to fix the roof on a timely basis. Nor does Soundcheck direct us to any evidence that All-Tex promised to make any roof repairs other than to address its alleged negligence on November 21, 2018.

The question before us, then, is whether the trial court erred in concluding that Soundcheck had released any claim to damages arising from All-Tex's failure to repair roof conditions allegedly caused by its negligence on November 21, 2018, even if All-Tex promised after the storm that it would make repairs. We conclude that the trial court did not. Carving out its lost-profits claim, Soundcheck released claims for "damages . . . both known and unknown, including future developments thereof . . . resulting or to result from that certain accident on or about November 21, 2018" regardless of its expectations as to the nature, extent, and results of such damages at the time of the release. *See Keck, Mahin & Cate v. Nat'l Union Fire Ins. Co.*, 20 S.W.3d 692, 698 (Tex. 2000) ("Although releases often consider

24

claims existing at the time of execution, a valid release may encompass unknown claims and damages that develop in the future."). While Soundcheck claims that it relied on post-storm promises by All-Tex to repair the roof, it has not directed us to summary-judgment evidence of damages allegedly resulting from All-Tex's failure to repair the roof on a timely basis that are not damages resulting from the November 21, 2018 accident.

Because the trial court properly concluded that Soundcheck's claims failed as a matter of law, we do not need to address whether the trial court erred in granting All-Tex's no-evidence motion for summary judgment as to those claims.

### All-Tex and GWA's Cross-Claims

GWA argues on appeal that the trial court erred in (1) granting All-Tex's traditional motion for summary judgment against GWA on All-Tex's "claim for contract damages"; and (2) granting All-Tex's traditional and no-evidence motions for summary judgment against GWA on GWA's contract, breach of warranty, and negligence claims against All-Tex.[3]

---

[3] In its appellate brief, GWA lists as one of its "issues presented" the question of whether the trial court erred in granting All-Tex's summary-judgment motions against Soundcheck, but does not argue the point or that GWA was harmed by that ruling. *See Torrington Co. v. Stutzman*, 46 S.W.3d 829, 843 (Tex. 2000) (noting that "Texas courts have long held that an appealing party may not complain of errors that do not injuriously affect it or that merely affect the rights of others," but that "a party whose own interest is prejudiced by an error has standing to appeal").

25

## A.    All-Tex's Claims

All-Tex included in its pleading a claim for "BREACH OF WRITTEN CONTRACT / SWORN ACCOUNT," in which All-Tex alleged that GWA had failed to pay All-Tex the parties' agreed price of $130,506 for the roof replacement. All-Tex alleged further that GWA had improperly refused to pay All-Tex until Soundcheck's claim against All-Tex's insurer had been resolved.

"A suit on a sworn account is not an independent cause of action; it is a procedural rule with regard to evidence necessary to establish a prima facie right of recovery of certain types of contractual claims."[4] *Miller v. Maplewood Square Council of Co-Owners*, No. 01-18-00914-CV, 2020 WL 3422290, at *3 (Tex. App.—Houston [1st Dist.] June 23, 2020, pet. denied) (mem. op.) (citing TEX. R. CIV. P. 185; *Rizk v. Fin. Guardian Ins. Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979)). Rule 185 provides that, if an action "is founded on an open account . . . on which a systematic record has been kept, and is supported by [an] affidavit of the party, his agent or attorney," then the account "shall be taken as prima facie

---

[4]    All-Tex argues on appeal that GWA failed to address on appeal the possibility that the trial court granted summary judgment on All-Tex's suit on sworn account rather than its contract claim. However, in its appellate brief, GWA includes among its list of "issues presented" the question of whether the trial court erred in granting All-Tex's summary-judgment motions on All-Tex's "claim for contract damages." GWA also argues that, given the evidence that ATR breached the parties' contract, the trial court "erred when it rendered summary judgment for [All-Tex] on its contract/sworn account claim," and notes that GWA had filed a sworn denial of "the sworn account claim."

evidence." If the defendant fails to file a sworn denial of the account, no further evidence is required. *Id*. GWA filed a sworn denial of All-Tex's account.

All-Tex moved for a traditional summary judgment against GWA on All-Tex's suit on sworn account and breach-of-contract cross-claim, arguing that it had offered evidence of the essential elements of the suit on sworn account. *See Clinton v. Gallup*, 621 S.W.3d 848, 852 n.2 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (noting that "elements of suit on a sworn account are: (1) the sale and delivery of merchandise or performance of services; (2) that the amount of the account is 'just,' that is, the prices charged are pursuant to an express agreement, or in the absence of an agreement, that the charges are usual, customary, or reasonable; and (3) that the outstanding amounts remain unpaid" (citing *PennWell Corp. v. Ken Assocs., Inc.*, 123 S.W.3d 756, 766 (Tex. App.—Houston [14th Dist.] 2003, pet. denied)). All-Tex argued that, even if GWA took issue with the amount of time that All-Tex took to complete the roof work, All-Tex had finished the work by May 16, 2024 "at the very latest."

In its response to All-Tex's summary-judgment motion, GWA argued that it was excused from performing under the parties' contract by All-Tex's failure to perform its work (1) in a good and workmanlike manner, as evidenced by roof leaks that continued to occur through July 2020, and (2) within a reasonable amount of time. *See In re Gruss*, 693 S.W.3d 656, 675 (Tex. App.—Houston [14th

27

Dist.] 2023, no pet.) (noting that, if parties contract without explicitly mentioning a time for performance, courts imply that performance must occur within a reasonable time). GWA argued All-Tex had breached the parties' contract by "[a]llowing rain water to pour through an opening in the roof" and "[t]aking a year and a half to do the job." GWA asserted that "it was more than a year and a half" after All-Tex began its work "before the roof was finally free of leaks." In its reply, All-Tex objected to various pieces of GWA's summary-judgment evidence on evidentiary grounds. However, All-Tex does not appear to have obtained a ruling on its objections.

The trial court granted summary judgment in favor of All-Tex. On appeal, GWA argues that the trial court erred in doing so. GWA argues again that it was excused from performing under the parties' contract by All-Tex's failure to perform its work in a good and workmanlike manner and within a reasonable amount of time. In response, All-Tex argues that the evidence attached to its summary-judgment motion established the essential elements of its suit on sworn account and breach-of-contract claim. All-Tex contends that it was GWA that did not perform the contract within a reasonable time because GWA failed to pay All-Tex for its work within a reasonable time after it was complete.

Because GWA opposed All-Tex's summary-judgment motion by invoking the affirmative defense of prior breach, GWA was required to come forward with

28

summary-judgment evidence sufficient to raise an issue of fact on each element of that defense to avoid summary judgment. *See Sampson*, 969 S.W.2d at 947; *Brownlee*, 665 S.W.2d at 112; *Triton 88, L.P. v. Star Elec., L.L.C.*, 411 S.W.3d 42, 58-59 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (affirming summary judgment against party based in part on its failure to raise material fact issue on each element of its prior-breach defense).

Generally, when one party to a contract commits a material breach of the contract, the other party is discharged or excused from further performance. *Rescue Concepts Inc. v. HouReal Corp.*, 696 S.W.3d 127, 138 (Tex. App.—Houston [1st Dist.] 2022, pet. denied) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004)); *Avasthi & Assocs., Inc. v. Dronamraju*, No. 01-11-00786-CV, 2012 WL 6644873, at *8 (Tex. App.—Houston [1st Dist.] Dec. 20, 2012, pet. denied) (mem. op.); *Henry v. Masson*, 333 S.W.3d 825, 840 (Tex. App.—Houston [1st Dist.] 2010, no pet.); *Gupta v. E. Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 756 (Tex. App.—Houston [14th Dist.] 2004, pet. denied). However, if the non-breaching party elects to treat the contract as continuing and insists the party in default continue performance, the previous breach constitutes no excuse for nonperformance on the part of the party not in default and the contract continues in force for the benefit of both parties. *Rescue Concepts*, 696 S.W.3d at 139; *Henry*, 333 S.W.3d at 840; *Gupta*, 140 S.W.3d at 756. Thus, treating a

29

contract as continuing after a breach deprives the non-breaching party of any excuse for terminating its own performance. *Long Trs. v. Griffin*, 222 S.W.3d 412, 415-16 (Tex. 2006); *Rescue Concepts*, 696 S.W.3d at 139; *Gupta*, 140 S.W.3d at 757; *Henry*, 333 S.W.3d at 840.

Here, the uncontroverted evidence before the trial court was that, after each alleged breach by All-Tex, GWA continued to treat the parties' contract as continuing. GWA did not treat the contract as terminated until it deemed All-Tex's performance to be complete, at which time it refused to pay All-Tex for the work. Thus, assuming without deciding that All-Tex materially breached the parties' contract, GWA did not come forward with summary-judgment evidence sufficient to raise an issue of fact on each element of its prior-breach defense. *See Leafguard of Tex., Inc. v. Guidry*, No. 09-21-00034-CV, 2023 WL 3369176, at *4 (Tex. App.—Beaumont May 11, 2023, no pet.) (mem. op.) (holding that homeowner could not refuse to pay storm-repair contractor based on contractor's alleged material breaches of contract where homeowner "did not elect to terminate the contract, bring in a new contractor to do the job, or file suit as soon as he learned that [contractor] had installed the wrong siding on his house" and, instead, "claimed the benefit of his contractual bargain and requested [contractor] to provide and install the siding specified in the contract" and "requested and received replacement windows for the windows that were alleged to have been

30

improperly installed," giving contractor "the opportunity to cure its defects"); *cf.*

*Nguyen v. Fantasias Cafe Inc.*, No. 01-18-00063-CV, 2018 WL 3849079, at *5

(Tex. App.—Houston [1st Dist.] Aug. 14, 2018, no pet.) (mem. op.) (reversing

summary judgment in favor of business owner based on contractor's failure to

meet construction deadline where, assuming contractor's breach was material,

contractor raised fact issue as to whether business owner elected to treat contract as

continuing after deadline by requiring further work from contractor).

## B.    GWA's Claims

GWA included in its pleading breach of contract, breach of warranty, and

negligence claims against All-Tex. GWA claimed that All-Tex's failure "to

promptly repair leaks in the roof it constructed" was a breach of contract and a

breach of an express workmanship warranty provided to GWA by All-Tex.[5] GWA

claimed further that All-Tex had negligently failed to (1) "recognize its work did

not meet the standards and conditions set out in the contract documents";

(2) "construct the project in accordance with good and sound practices and

standards recognized in the construction industry; the requirements of any

warranties applicable to the work; and the plans, drawings, and specifications for

---

[5]    The "WORKMANSHIP WARRANTY" states in pertinent part that: "The workmanship for specific roof replacement per attached scope of work on this roof, we guarantee for a period of two (2) years from this date of completion [December 7, 2018] against leaks due to inferior workmanship. Any leaks for the above causes will be repaired without charge upon notice from the Owner. Repairs will be made in a reasonable length of time."

31

the [p]roject"; (3) "properly construct, install, and supervise the construction and installation of the roofing work required by its contract"; and (4) "supervise [its] agents and employees completing the work under the conditions of its contract."

All-Tex filed traditional and no-evidence motions for summary judgment on GWA's claims. The trial court granted All-Tex's motions without stating the grounds for its ruling.

### 1.    GWA's contract claim

All-Tex argued in its no-evidence motion, and argues on appeal, that GWA's breach-of-contract claim fails because there was no evidence of performance by GWA, an essential element of a breach-of-contract claim. *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 501 n.21 (Tex. 2018) (noting that breach-of-contract claim requires proof of (1) formation of valid contract, (2) performance by plaintiff, (3) breach by defendant, and (4) plaintiff's having sustained damages due to that breach). GWA responded below, and argues on appeal, that All-Tex's prior breaches of contract excused GWA from performing.

As discussed above, treating a contract as continuing after a breach deprives the non-breaching party of any excuse for terminating its own performance. *Long Trs.*, 222 S.W.3d at 415-16; *Gupta*, 140 S.W.3d at 757; *Henry*, 333 S.W.3d at 840. A non-breaching party's decision to treat a contract as continuing after a breach does not prevent that party from bringing a breach-of-contract claim, but does

32

obligate the non-breaching party to fully perform the contract. *Gupta*, 140 S.W.3d at 757 n.7; *see also Balfour Beatty Rail, Inc. v. Kansas City S. Ry. Co.*, 173 F. Supp. 3d 363, 406-07 (N.D. Tex. 2016) (noting that, under Texas law, treating contract as continuing after breach "does not deprive the nonbreaching party of its contract claim" and that non-breaching party is "deprived only of any excuse for ceasing its own performance under the contract"), *aff'd as modified on other grounds*, 725 F. App'x 256 (5th Cir. 2018); *Rescue Concepts*, 696 S.W.3d at 139 (noting that "[s]eeking to benefit from the contract after the breach operates as a conclusive choice depriving the non-breaching party of an excuse for his own non-performance" and obligating it to "fully perform"). Thus, even viewing the summary-judgment evidence in the light most favorable to GWA, the trial court did not err in granting All-Tex's no-evidence summary-judgment motion as to GWA's breach-of-contract claim. *See Menchaca*, 545 S.W.3d at 501 n.21. Because we hold that the trial court did not err in granting All-Tex's no-evidence summary-judgment motion as to GWA's breach-of-contract claim, we do not reach All-Tex's claim that the trial court erred in granting All-Tex's traditional summary-judgment motion as to GWA's breach-of-contract claim. *See* Tex. R. App. P. 47.1 ("court of appeals must hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

## 2. GWA's breach of warranty claim

All-Tex argued in its no-evidence motion, and argues on appeal, that GWA's breach-of-warranty claim fails because All-Tex did not breach any warranty and GWA suffered no damages as a result of any alleged breach. *See Staton Holdings, Inc. v. Tatum, L.L.C.*, No. 05-12-01408-CV, 2014 WL 2583668, at *2 (Tex. App.—Dallas June 10, 2014, pet. denied) (mem. op.) ("The elements of a claim for breach of warranty for services are (1) the defendant sold services to the plaintiff; (2) the defendant made a representation to the plaintiff about the characteristics of the services by affirmation of fact, by promise, or by description; (3) the representation became part of the basis of the bargain; (4) the defendant breached the warranty; (5) the plaintiff notified the defendant of the breach; and (6) the plaintiff suffered injury." (citing *Paragon Gen. Contractors, Inc. v. Larco Constr., Inc.*, 227 S.W.3d 876, 886 (Tex. App.—Dallas 2007, no pet.))).

GWA responded below, and argues on appeal, that All-Tex breached its warranty by not repairing leaks within a reasonable time and that, as a result, GWA has been unable to collect rental payments owed to it. The evidence on which GWA appeared to rely in the trial court as support for its claim that, after December 7, 2018, All-Tex did not repair "leaks due to inferior workmanship" upon "notice from" GWA within "a reasonable length of time" was:

- An All-Tex employee's testimony that replacing a roof like that at issue should take one to two months

34

- A GWA employee's testimony that Soundcheck complained about water intrusions in 2019

- The president of GWA's general partner's testimony that leaks continued to occur after All-Tex said its repairs were complete

- A Soundcheck owner's testimony that water came in through the roof of the building in May or June 2019

- An All-Tex employee's testimony that All-Tex performed repairs after January 2019

- The president of GWA's general partner's testimony that leaks were still being reported in October 2019

- A Soundcheck owner's testimony that, in September and October 2019, water was still coming in through the roof and a hole in the roof had been discovered

- An All-Tex employee's testimony that All-Tex was still doing repairs on November 20, 2019

- All-Tex's position that it completed its work by May 16, 2020

- The president of GWA's general partner's testimony that the leaks stopped in July 2020

- The president of GWA's general partner's testimony that All-Tex failed to repair leaks it promised it would repair

- The president of GWA's general partner's testimony that All-Tex breached the workmanship warranty

Even when it is viewed in the light most favorable to GWA, the referenced evidence is no evidence that All-Tex did not repair "leaks due to inferior workmanship" within "a reasonable length of time." The above is some evidence

35

of the time period during which post-warranty leaks occurred (May or June 2019 through October 2019) and when All-Tex stopped performing repairs (May or November 2019). But it is no evidence for any given leak as to when GWA gave All-Tex notice of the leak or how long it took All-Tex to repair the leak. Nor is it evidence of how long any such leak would reasonably take to repair. *Cf. Pruett v. River Land Holdings, LLC*, No. 03-22-00478-CV, 2024 WL 1745652, at *6 (Tex. App.—Austin Apr. 24, 2024, no pet.) (mem. op.) (reversing summary judgment that oil and gas lease had terminated due to cessation of production in paying quantities, which in absence of lease language defining period to be considered must be measured over reasonable period of time, based in part on absence of evidence of what timeframe would constitute reasonable period of time).

Thus, even viewing the summary-judgment evidence in the light most favorable to GWA, the trial court did not err in granting All-Tex's no-evidence summary-judgment motion as to GWA's breach-of-warranty claim. *See Staton Holdings*, 2014 WL 2583668, at *2. Because we hold that the trial court did not err in granting All-Tex's no-evidence summary-judgment motion as to GWA's breach-of-warranty claim, we do not reach All-Tex's claim that the trial court erred in granting All-Tex's traditional summary-judgment motion as to GWA's breach-of-warranty claim. *See* TEX. R. APP. P. 47.1.

### 3. GWA's negligence claims

All-Tex argued in its no-evidence motion, and argues on appeal, that GWA's negligence claims fail because there is no evidence supporting any of the elements of GWA's negligence claims, including that All-Tex owed any legal duty to GWA independent of those set forth in the parties' contract. *See Tenaris Bay City Inc. v. Ellisor*, 718 S.W.3d 193, 197 (Tex. 2025) ("The elements of a negligence cause of action are the existence of a legal duty, a breach of that duty, and damages proximately caused by the breach."). All-Tex also sought a traditional summary judgment against GWA on the ground that GWA's negligence claims were barred by the economic-loss rule. *See Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12-13 (Tex. 2007) (noting economic loss rule "restricts contracting parties to contractual remedies for those economic losses associated with the relationship, even when the breach might reasonably be viewed as a consequence of a contracting party's negligence"). For example, in its traditional motion, All-Tex argued in part that: "GWA's negligence claim runs afoul of the economic loss rule, which limits recovery in negligence cases when the damages sought relate only to the subject matter of a contract."

In the trial court and on appeal, GWA has argued simply that the same evidence that supports its contract claim also supports its negligence claim. GWA has not addressed the economic-loss rule and has not differentiated between

37

damages it claims resulted from All-Tex's alleged breach of contract and its alleged negligence. Instead, GWA has argued that both All-Tex's alleged breach of contract and its alleged negligence physically damaged GWA's warehouse and impaired GWA's ability to collect rent from Soundcheck.

We do not consider that argument because, in its appellate brief, as in its response to All-Tex's motion for summary judgment, GWA has not addressed All-Tex's argument that it is entitled to summary judgment on GWA's negligence claims under the economic-loss rule. Where, as here, a trial court does not specify the grounds on which an order granting summary judgment is based, "the appealing party must negate each ground upon which the judgment could have been based." *Rosetta Res. Operating, LP v. Martin*, 645 S.W.3d 212, 226 (Tex. 2022). To do so, the appealing party must brief each such argument to the court of appeals, which cannot properly reverse summary judgment on a potential ground that was not briefed. *Id.* at 227 (citing *Malooly Bros. v. Napier*, 461 S.W.2d 119, 121 (Tex. 1970); Tex. R. App. P. 38.1(i) (stating that appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record")). In short, "[w]e must affirm when a judgment may have been rendered, whether properly or improperly, on a ground not challenged on appeal." *McCoy v. Rogers*, 240 S.W.3d 267, 272 (Tex. App.—

Houston [1st Dist.] 2007, pet. denied) (citing *Vawter v. Garvey*, 786 S.W.2d 263, 264 (Tex. 1990)).

Because All-Tex's argument that GWA's negligence claims are barred by the economic-loss rule may have been the trial court's grounds—whether proper or improper—for its summary judgment on GWA's negligence claims, we must affirm the trial court's summary judgment because GWA has not challenged those grounds on appeal. Indeed, while GWA argues that the same evidence that supports its contract claim also supports its negligence claims, GWA in its appellate brief cites no legal authority in support of its negligence claims. Under similar circumstances, the Texas Supreme Court in *Rosetta* affirmed the trial court's summary judgment on an appellant's tort claims, which may have been granted based on the appellee's economic-loss-rule defense. *See* 645 S.W.3d at 227-28 (affirming summary judgment against appellants because their appellate brief included "no citations or authorities related to their tort . . . causes of action or to [appellee's] economic-loss-rule defense").

We thus overrule GWA's second point of error.

### Conclusion

We affirm the trial court's judgment.

Amparo "Amy" Guerra
Justice

Panel consists of Justices Guerra, Caughey, and Dokupil.